# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## MICHAEL v. ROANOKE MACHINE WORKS.

### FEBRUARY 1st, 1894.

1. EMPLOYEES—*Risks—Other perils—Warning.*—An employee's assumption of the hazards of his employment, does not extend to the hazards of a work of a different character to which his employer temporarily orders him. And in such case, he is entitled to rely on his employer's giving him proper warning of other perils unknown to him, and from which said work necessarily distracts his attention.

2. IDEM—*Negligent injuries—Case at bar.*—One, employed as a helper in defendant's boiler shop, was ordered to do a novel and engrossing work—that of emptying certain oil pans; and whilst sitting on a wall twenty-five feet high with his legs hanging over its side, and reaching down two and a half feet to empty the pans with his left hand, he had to hang for support, his right arm across an iron rail on top of the wall, on which moved on flanged wheels a huge crane propelled by an engine. When he started to do the work, the crane was stationary. He had to sit with his back to the crane, and was engrossed with emptying the third pan when the crane was set in motion, without warning to him, and passing over his right arm, crushed it. On demurrer to the evidence at trial of action for damages,

HELD :

    The defendant company is liable, the injury being the result of its negligence, without contributory negligence on the plaintiff's part.

3. PRACTICE AT COMMON LAW—*Demurrer to evidence.*—If the court would not set aside the verdict so finding the fact, that fact should be considered as established by the evidence demurred to.

4. IDEM—*Argument.*—It was not improper to allow counsel in discussing the amount of damages, to state to the jury that, so far as they were concerned, the demurrer to evidence was a practical admission of negligence on the defendant's part.

Error to judgment of corporation court of city of Roanoke in an action of trespass on the case wherein B. K. Michael was plaintiff and the Roanoke Machine Works was defendant. The defendant company demurred to the plaintiff's evidence, and the jury assessed his damages at $10,000, subject to the demurrer, which the court below sustained. The plaintiff brought the case here on error. Opinion states the case.

*Hardaway & Payne, Staples & Munford*, and *Scott & Staples*, for plaintiff in error.

*S. Griffin* and *J. A. Watts*, for defendant in error.

LEWIS, P., delivered the opinion of the court.

This was an action for personal injuries sustained by the plaintiff while in the employ of the defendant company as a helper in its boiler shop. At the trial the defendant, without offering any evidence, demurred to the plaintiff's evidence, whereupon the jury conditionally assessed the damages at $10,000. The court, however, sustained the demurrer, and gave judgment for the defendant.

The injury complained of was caused by the crane, as it is called, being run against the plaintiff's right arm, which crushed it, and necessitated its amputation. The crane is a huge, ponderous machine used for moving engine boilers and other heavy weights from one place in the shop to another, the motive power being supplied by an engine. It moves on flange wheels which run on iron rails at either side of the shop. These rails are laid on walls about twenty-five feet high, and the axles of the crane consequently extend across the shop. The machinery of the crane, including the grappling hook, hangs under the axles, as does the cab, which is occupied by the operator of the crane. On the floor below several hundred men are employed, whose position, in consequence of the

swinging of the grappling hook when the crane is in motion, is one of danger, requiring the operator's constant attention.

The plaintiff testified that when he arrived at the shops the morning of the accident the fire in the engine that runs the crane had been extinguished; that some time afterwards he was ordered by the foreman of the boiler shop to empty certain pans which were fixed under the shafting to catch the waste oil; that this shafting is hung about two and a half feet below the track on which the crane runs, and that to enable him to empty the pans he had to sit down on the wall, with his feet and legs hanging over the side of it, then hang his right arm across the rail, lean forward, and with his left hand "reach down and take off the buckets." He also says that when he started to obey the foreman's order the crane was still stationary, and that after emptying two of the pans he looked and it was standing in the same position, about one hundred and fifty or more feet distant from him, but that while he was in the act of taking off the third pan " they ran the crane up, without any warning," and crushed his arm.

The pans were hung on wire, and " it took some time," he says, " to undo the wire." It seems that he had been engaged ten or fifteen minutes in attempting to unfasten the third pan, when the accident occurred; and as it does not affirmatively appear that this was an unreasonable time, the inference, on the demurrer to evidence, is that it was not. In the position he was in, which, he says, was necessary to enable him to remove the third pan, the crane approached him from the rear; and when asked to explain why this position was necessary, he answered: " Because it was a double pulley. They had a large pulley where the belt came through from the belt room, and it had a box on each side, and in order to take off the box on the eastern side I had to hang with my back to the crane and take it off with my left hand."

The plaintiff was employed as " a helper in the boiler shop to help boiler-makers." Nothing was said in the contract of service

about removing oil pans, and although he had been in the service about four months, when the accident occurred, he had never before been ordered to perform that duty. In other departments of the company's business there were men specially employed to do similar service, and since the accident a man has been employed for that special service in the boiler shop.

Usually the whistle is blown, as a signal, when the engine that runs the crane is started; and when the crane was started, immediately before the accident, the whistle sounded twice, but neither the plaintiff nor his companion, Lawhorne, heard it. This was, no doubt, owing to the great noise incident to the operations in the boiler shop, which is described by one of the witnesses as "deafening." Another says: "You can hardly hear yourself in there at all." The evidence, moreover, is that there is no signal for the starting of the crane, and that the running of the engine does not necessarily mean that the crane is in motion. The operator of the crane testified expressly that "there is no signal for moving the crane, and no one to look out for persons on the wall."

Counsel for the company assumed in the argument that the movement of the crane does not exceed a speed of one hundred feet in three minutes, but this assumption is not warranted by the record. The point, however, in our view of the case is not a material one.

The questions to be determined are: (1) Whether the defendant company was negligent; and (2) whether, if it was, the plaintiff was guilty of such contributory negligence as to defeat a recovery.

It is an undisputed rule of the common law that the servant, when he enters the service of another, impliedly assumes the hazards of the employment, including the negligence of fellow-servants. But this applied assumption is confined to those risks which are within, or naturally incident to, the employment. Therefore, if the servant is ordered to temporarily work in another department of the general business, where

the work is of such a different character that it cannot be said to be within the scope of the employment, he will not, by obeying such orders, necessarily assume the risks incident to the work. *Jones* v. *Old Dominion Cotton Mills,* 82 Va., 140; *Railroad Co.* v. *Fort,* 17 Wall., 553; *Pittsburg, &c., Ry. Co.* v. *Adams,* 105 Ind., 151.

It is not necessary, however, to rest the decision of the present case upon this principle. We think the plaintiff is entitled to recover, on the broad ground that it is the duty of the master to take ordinary care for the servant's protection, in the course of the employment, and that this has not been done in the present case.

In *Priestley* v. *Fowler,* 3 M. & W., 1, the earliest reported case on the subject, while it was held that the master was not liable in that case for injuries received by the servant in consequence of the breaking down of an overloaded van, yet it was laid down as an undoubted proposition that " the master is bound to provide for the safety of his servant in the course of his employment, to the best of his judgment, information, and belief." The same principle has since been repeatedly recognized by the House of Lords, by the Supreme Court of the United States, and by the courts of the several States of the Union. *Paterson* v. *Wallace,* 1 Macq., 748; *Hough* v. *Railway Co.,* 100 U. S., 213; *B. & O. R. R. Co.* v. *McKenzie,* 81 Va., 71; *R. & D. R. R. Co.* v. *Norment,* 84 *Id.,* 167; *Richland's Iron Co.* v. *Elkins, ante* p. 249.

In the last mentioned case, after referring to this rule, it was added that the master is also bound, so far as he can by the use of ordinary care, to avoid exposing his servants to extraordinary risks, and that the failure of one who employs servants in a complex and dangerous business to prescribe rules sufficient for its orderly and safe management is negligence.

Accordingly, the servant has a right to assume, when placed in a situation of danger, where engrossing duties are required of him, that the master will not, without proper warning, sub-

ject him to other perils unknown to him, and from which the work exacted, necessarily distracts his attention. 14 Am. & Eng. Ency. of Law, 855. This was the principle of the decision in the *Norment Case, supra;* and, as is well stated in a recent Indiana case, another duty of the master is " not to expose an inexperienced servant, at whose hands he requires a dangerous service, to such danger without giving him warning. He must also give him such instruction as will enable him to avoid injury, unless both the danger and the means of avoiding it are apparent." *Atlas Engine Works* v. *Randall,* 100 Ind., 293.

These salutary rules, which are founded in justice and public policy, have been disregarded in the present case. Not only was there no warning or instruction given the plaintiff before he was ordered to perform the dangerous, and to him novel, duty of emptying the oil pans, but the crane was started and driven upon him, without any signal being given that he could hear, or any lookout provided, or precaution of any sort taken to warn him of its approach. The youth, Langhorne, who was with him on the wall at the time of the accident, was not ordered to accompany him as a lookout, but to hold a bucket for the waste oil to be poured into from the pans; and had he been sent as a lookout, any negligence on his part, while acting in that capacity, would have been the company's negligence. *B. & O. R. R. Co.* v. *McKenzie,* 81 Va., 71.

It is contended, however, that the plaintiff was guilty of contributory negligence in not looking out for his own safety; and *Marks' Adm'r* v. *Petersburg R. R. Co.,* 88 Va., 1, is relied upon. That was the case of a fatal injury to a person while attempting to cross a railroad track at a street crossing; and it was held that there could be no recovery because of the failure of the plaintiff's intestate to exercise ordinary care. But the present case is widely different from that; and as negligence is a relative term, each case must be determined on its own circumstances.

Here the plaintiff was ordered to do work, which, according to the evidence, the credit of which is admitted by the demurrer to evidence, required his undivided attention. It was, besides, work as to which he was inexperienced. He testifies that he was never on the wall but twice before the accident, and that on each of those occasions he was sent to do entirely different work. This was presumably known to the foreman of the shop, who yet gave him no warning or instruction when the order to empty the pans was given.

He testifies, morever, that when he arrived at the shops the fire in the engine that runs the crane had been extinguished, and that the crane was stationary. How long after this it was that he was ordered to empty the pans does not distinctly appear; but when, in obedience to the order, he went on the wall, the crane was still stationary, and, as he supposed, for the same reason; and it had not moved from that position when, after he had removed two of the pans, he looked in that direction.

The defendant contends that the plaintiff by turning his head could have seen the approach of the crane, and that he was negligent in not keeping a proper lookout. But the engrossing nature of the duty he was performing, and all the other circumstances of the case already adverted to, together with the presumption, upon which he had a right to rely, that the defendant would act with due care in providing for his safety, negative the idea of contributory negligence on his part, and entitle him to recover.

It is not to be overlooked that the case stands on a demurrer to evidence, and, consequently, that all inferences from the evidence most favorable to the demurree are to be drawn when there is any doubt as to which of two or more inferences shall be deduced. In such a case the established test is that laid down by Judge Stanard in *Ware* v. *Stephenson*, 10 Leigh, 155, who said: " When the question is whether or no a fact ought to be taken as established by the evidence, either directly or

indirectly, in favor of the demurree, I do not know a juster test than would be furnished by the inquiry, Would the court set aside the verdict had the jury on the evidence found the fact? If the verdict so finding the fact would not be set aside, it ought to be considered as established by the evidence demurred to." And in a long line of cases this court has decided that where some evidence has been given tending to establish the fact in issue, or where the evidence consists of circumstances or presumptions, a verdict fairly rendered ought not to be set aside merely because the court, if upon the jury, would have given a different verdict, but the evidence must be plainly insufficient to justify the verdict being set aside.

Viewing the case at bar in the light of these principles, we are constrained to the conclusion that had the jury, upon the whole case, found for the plaintiff, it would have been improper to set aside the verdict, and, therefore, that judgment on the demurrer ought to have been given for the plaintiff.

As to the action of the trial judge in permitting the plaintiff's counsel in the argument upon the question of the *quantum* of damages to state to the jury that, so far as they were concerned, the demurrer to evidence was a practical admission of negligence on the part of the defendant, we see nothing to the prejudice of the defendant.

For the reasons, however, already stated, the judgment must be reversed, and final judgment entered for the plaintiff for the damages conditionally assessed by the jury, with interest and costs.

JUDGMENT REVERSED.