## INLAND STEEL COMPANY v. SMITH.

[No. 5,239.   Filed October 31, 1905.   Decided in Supreme Court, March 15, 1907.]

1. MASTER AND SERVANT.—*Safe Place.—Non-Delegable Duty to Provide.*—Where the master puts the servant at work in a place where such servant cannot watch the operation of a moving crane which necessarily makes his place of work dangerous, it is the master's non-delegable duty to provide a sufficient means of warning to prevent his injury.   p. 644.

2. TRIAL.—*Interrogatories to Jury.—Purpose.*—It is not necessary for the answers to the interrogatories to establish plaintiff's right to recover, where the general verdict is in his favor; nor does an inconsistency in such answers affect such general verdict.   p. 645.

3. SAME. — *Answers to Interrogatories. — General Verdict.* — Where the general verdict is not irreconcilable with the answers to the interrogatories to the jury under any supposable evidence admissible, the general verdict controls; and no inferences will be indulged in favor of such answers, but all inferences will be indulged in support of the general verdict.   p. 645.

4. MASTER AND SERVANT.—*Assumption of Risk.—Master's Negligence.*—The servant does not assume the risk of the master's negligence.   p. 645.

5. SAME. — *Contributory Negligence. — Question for Jury.* — Whether the servant assumed the risk of injury from a moving crane, while at work in a position where he could not see its movements; and whether he was guilty of contributory negligence in working at such place, were questions for the jury. p. 645.

6. TRIAL.—*Interrogatories to Jury.—Master and Servant.—Contributory Negligence.*—Answers to interrogatories to the jury showing that the plaintiff was set to work in a place where he could not watch the movements of a swinging crane; that while engaged in his work the master directed another servant, who could not watch plaintiff, to operate such crane, and that by

Inland Steel Co. *v.* Smith—39 Ind. App. 636.

reason thereof, without any warning to plaintiff, he was injured, are not in irreconcilable conflict with a general verdict for plaintiff. p. 645.

7. TRIAL.—*Instructions.—Modification.—How Considered.—Statutes.*—Under §544a Burns 1905, Acts 1903, p. 338, §1, an instruction requested by a party, but modified by the court, is regarded as a requested instruction refused, and the modified instruction is regarded as one given by the judge on his own motion. p. 648.

8. SAME. — *Instructions. — Dating Exceptions. —* An exception, under §544a Burns 1905, to the giving or refusal to give an instruction, must be dated, as well as signed. p. 648.

9. SAME.—*Instructions.—Joint Exceptions.*—An exception to "all of" certain instructions is joint. p. 648.

10. APPEAL.—*Trial.—Instructions.—Exceptions.*—Where proper exceptions to the giving of instructions are not taken, and the giving of such instructions is assigned as a reason for a new trial, no question, on appeal, can be presented as to such instructions. p. 649.

11. SAME.—*Briefs.*—Instructions not questioned in the "points" in the brief, on appeal, will not be considered. p. 649.

12. TRIAL.—*Instructions.—Excepting to.*—Under §544a Burns 1905, Acts 1903, p. 338, §1, the judge is required to indicate which of requested instructions are given and which refused; and the parties must note their exceptions to the court's rulings if they desire to save any questions thereon. p. 649.

13. APPEAL. — *Evidence. — Briefs. — New Trial. — Setting Out Record to Present Questions.*—Where the appellant assigns error on the overruling of his motion for a new trial, rulings on evidence being included therein, he must set out in his brief so much of the record as presents the questions involved in such rulings on the evidence. p. 650.

14. SAME. — *Answers to Interrogatories. — Erroneous. — When Harmless.*—Where erroneous answers are made to interrogatories to the jury, they are harmless, where, if answered as desired, they would not overcome the general verdict. p. 650.

From Laporte Superior Court; *Charles H. Truesdell,* Special Judge.

Action by Fred Smith against the Inland Steel Company. From a judgment for plaintiff, defendant appeals. (Appealed to the Supreme Court under subd. 3, §1337j Burns 1901, Acts 1901, p. 565, §10. See 168 Ind. 245.) *Affirmed.*

*N. L. Agnew* and *H. E. Cutler,* for appellant.
*Peter Crumpacker* and *D. J. Moran,* for appellee.

BLACK, J.—The appellee recovered judgment against the appellant for a personal injury. In the complaint it was shown that the appellant owned and operated a large steel manufacturing plant at Indiana Harbor; that on the morning of June 12, 1902, the appellee was employed by the appellant; that through its officers and agents the appellant directed the appellee to engage in the work of fastening certain cleats, for the hanging of electric wires, to a certain tall pillar in appellant's mill, which direction was a reasonable one, and the appellee obeyed it, as it was his duty to do; that the cleats were put on by passing a bolt through the iron of said pillar and screwing a nut down on the bolt, so as to hold the cleat firmly in place; that in order to do the work the appellee was directed by the appellant to climb up on a certain horizontal beam and to stand on the flange thereof and on the angle-iron attached to the pillar, which was a reasonable direction, and the appellee obeyed it; that in order to retain his foothold, which was very slight and precarious, and to do the work which he was required to do, it was necessary that he put his arm around the upper portion of the pillar at some distance above the horizontal beam, and he did so; that he put his left arm around the pillar in order to hold himself in the position in which it was necessary for him to be to do the work; that at that time, and for some days prior thereto, the appellant used, operated and had charge of a certain large traveling crane, which was operated and moved over the horizontal beam so attached to the pillar, which crane was a part of the equipment of the building and plant; that when he was in this position, with his arm around the pillar, in discharge of his duty, the appellant knew, or ought to have known, the dangerous position in which appellee was placed; that he was in full view of the agents and representatives of the appellant operating the crane; that it was necessary for him

to work with his back to the crane, and he did so work, and in this position he could not see the crane moving or approaching him; that his work necessarily engrossed his entire attention, and he could not see and did not know the crane was being operated over the beam by the pillar about which he had his left arm, and he had no reason to suspect that the crane was being operated or would be operated while he was in this position, without notice to him, so that he might protect himself from injury, which he could and would have done if warned or notified; that the appellant did not give him any notice or warning that the crane was being used, and he did not know of that fact or of the danger therefrom; that while he was in the position described, in obedience to said orders, and in the careful performance of his duties, and wholly without fault on his part, the appellant negligently, without warning or notice to him, ran the traveling crane noiselessly and quietly down, against and upon him; that the appellant negligently failed to equip the crane with a bell or other means for the purpose of warning persons that might be injured by it when it was put in motion, and negligently constructed the crane so that in passing the pillar on the horizontal beam it passed very close to it; that appellee did not know the crane was being operated on the horizontal beam, and did not know of the danger of his position, and did not know that the crane would not clear the beam in such manner that his arm would not be caught by it, as hereinafter stated; that at the time of his injury and the time of running the crane down upon him the Indiana Bridge Company, by its officers, agents and employes, was engaged in placing certain large iron or steel plates in the floor of the building and riveting them to the beams thereof; that this work made a great deal of noise, so that it was impossible for the appellee to hear the slight noise made by the moving of the crane; that the crane was negligently run against and upon the appellee by the appellant, and thereby

and by reason of said negligence of the appellant he was crushed, mangled, mutilated, bruised and lacerated—describing his injuries and stating his damages, etc.

The appellant does not suggest any defect in the complaint, but in its brief it is said that it may be sufficient to show a cause of action, and we are asked to consider it in connection with the evidence and the answers to the interrogatories to the jury returned with the general verdict. By these answers to interrogatories, the history of the injury is related, and much of what is thus found specially is substantially in agreement with the averments of facts in the complaint. The crane was owned by the appellant and was operated by John Nelles, an employe of the appellant, and it was traveling from east to west. Nelles was in a cage suspended below the crane at the north end thereof within a few feet of the north rail, on which the crane traveled, and he was required to look southward while operating the crane. There was no evidence, it was found, that the crane had moved that morning, prior to the time of the injury. The appellee, on that morning before his injury, had bored four or five holes in the columns, above the track on which the crane traveled, and he had been thus engaged about thirty minutes. At the time of his injury he was engaged in fastening a cleat upon one of the columns which supported the girder on which rested the rail which supported the truck of the crane. There was nothing to prevent the appellee, had he looked, from seeing the crane while walking in the department in which it was situated. He could not have seen the crane while he was boring the holes, and could not have seen it, it was found, just prior to the time he was injured, from the point where he was injured, had he looked, because he was too busy with his work. He did not see and observe the rail and track on which the crane traveled, while he was fastening on the cleat and before his injury, though there was nothing to prevent him from seeing the rail or track had he looked.

He did not, while he was in the building, look for the crane at any time prior to his injury. He was not sufficiently familiar with cranes, such as this one, to know their purpose and manner of operation. "Interrogatory 44. Did the plaintiff look for said crane or use any precaution whatever to protect himself from injury from said crane, at any time while he was in said open-hearth department on June 12, 1902, and prior to his injury? A. Did not know of crane's being there, and no precaution was necessary." If he had looked, from the point where the injury occurred, he could not have seen the crane approaching in time to escape the injury, because he was too busy with his work. He could not have heard, if he had listened, nor felt the vibrations of the crane upon the track at and prior to the time of his injury, because there was too much noise. His injury was caused by his arm's being caught between the upright column and the end of the girder of the crane. He was not injured because he changed his position and placed his left arm around the column after the first beam of the girder had passed him. He was an able-bodied man, in the possession of all his faculties, and twenty-three years of age. He had worked seven years in a steel-mill similar in construction to the one in which he was injured. He was upon the column where he was injured from three to five minutes before the injury occurred. He was standing upon the flange (about two and one-half inches wide) of the girder upon which the crane was operated, and he had his left arm around the column. It was sufficiently light where he was working, so that he could see over the building without the aid of artificial light, and there was no artificial light in that part of the plant. There was sufficient light in the building so that the crane could be seen in any part thereof where he was working. McGrath, Stoneburner and Nelles, employes of the appellant, were present at the time of the injury. The appellee was working with Stoneburner, who was directing the work upon which he and the

appellee were engaged. Stoneburner had no authority to employ, to discharge, to pay the appellee, or to do anything more than to instruct him in the work. Stoneburner and the appellee were engaged in fastening cleats upon the column which supported the girder and T-rail upon which the north truck of the crane traveled, for the purpose of supporting electric light wires, which were to be used in lighting the building, when put in operation; the appellee being engaged in bolting cleats upon the column where he was injured, and Stoneburner being engaged in doing the same work upon another column. Stoneburner and the appellee went to this place with the cleats and tools for fastening them upon the columns, and they both did the same kind of work and in the same manner, except that Stoneburner instructed the appellee how to do the work. Stoneburner and the appellee were both under the charge and control of one McCullom, superintendent of the electrical department of the appellant. There was no evidence, it was found, that McCullom was in the building at the time of the injury. Nelles, who operated the crane, was engaged in moving material for the construction of the building from one place to another in the building by means of the operation of the crane. His whole duty consisted in so doing, at the request and upon the order of any one who desired such material to be used. Nelles did not have any charge or control over the movements of the appellee, and did not have any connection with the appellee in the service of the appellant other than being engaged in the construction of the building. McGrath, an employe of the appellant, was about twenty-five or thirty feet from the appellee at the time of the injury, engaged in the construction of the building, as superintendent of the open-hearth department. McGrath was not in any way connected with the appellee or concerned in his work. There was no evidence, it was found, that the crane was in any way defective. "Inter-

rogatory 94. Did the plaintiff's injury result from the negligence of any person in the employ of the defendant on June 12, 1902? A. Yes. Interrogatory 95. If you answer the foregoing interrogatory in the affirmative, please state, the name of such employe, and what he was doing. A. McCullom, the superintendent of the electrical department of the Inland Steel Company. No evidence as to what he was doing. Interrogatory 96. If you answer the last preceding interrogatory but one in the affirmative, please state in what such negligence consisted. A. In not giving the needed instructions to the plaintiff." It was further found that the appellee's injury was directly due to the failure of McCullom to give the appellee notice of the approach of the crane at the time of his injury; that warning or notice could have been given the appellee that was not given, by placing a man to warn all of approaching danger; that appellee's injury was not due to his own failure to look for the approach of the crane; that he did not see and know of its approach before it reached him; that he was not assisting in the construction of the building, but was putting up electrical appliances. "Interrogatory 105. Was not said building at said time in an uncompleted state, and were not all the workmen in said building at said time engaged in the construction of said building? A. No. Some were, some were not." The appellee, prior to his injury, knew that the building was incomplete and in process of construction, but he took no part in the construction thereof. No person in the employ of the appellant saw the appellee at the time he was injured. No person in the employ of the appellant at the time of the injury saw the appellee and the crane in time to warn appellee or to prevent said injury. He had been in the employ of the appellant about two and one-half months prior to his injury. "Interrogatory 113. If the jury find that any person in the employ of the defendant at the time

of the plaintiff's injury failed to warn the plaintiff of the approach of the crane, whose duty it was to do so, state who such employe was.    A. McCullom."

The legal principles pertaining to the relation of employer and employe, with reference to the safety of the place in which the latter performs the duties of his employment and to the giving of warning or notice of dangers to which the employe is exposed, are so well settled and have been so often stated in the decisions of the Supreme Court and of this court that there does not seem to be need for any discussion of them here.    While the appellee was properly engaged at his employment in a place which was apparently

1.    safe, the appellant, pursuing other proper and necessary work of the establishment, caused the place of the appellee's employment to become dangerous, and brought about his injury by failing to provide any warning of the approach of the crane.    There does not appear to have been any breach of duty on the part of the employe who operated the crane, the performance of whose duty required him to look in a direction away from the appellee. The use of the crane was not unusual or negligently performed; but it inevitably was dangerous to a person situated as the appellee rightfully and without negligence on his part was situated in the performance of his duty, unless he were by some means warned of the approach of the crane in time to avoid it.    That there was need of such warning when the crane was being so operated is manifest.    The want of it put the appellee in danger and caused his injury. That it was the master's duty, in order to maintain the safety of the appellee's place of employment, to provide proper means of warning him of the approach of the crane, there is no doubt.    The absence of warning made the place become unsafe, and the duty of keeping it safe was one which the master could not escape by delegating it to an employe, who failed in the performance of the obligation.

It, of course, was not necessary that the answers of the jury to the interrogatories (which were framed by the appellant) should affirmatively establish the appellee's cause of action, nor could any mere inconsistency in the answers themselves affect the general verdict. Evidence would not be inconsistent with these answers which tended to prove that the employment of the appellee in the service of the appellant for two and one-half months had been in an entirely different kind of service, in an entirely separate part of the establishment, and that he had never seen the crane at work, and had never been in the part of the building where it was until the morning when he was injured, and that his work on that morning, without fault on his part, had wholly occupied his attention. It cannot be presumed from the answers to the interrogatories, that he knew or ought to have known of the danger of his position in the accomplishment of his task, or that he had a duty to inspect the premises, which he neglected to perform. The danger cannot be said to have been within the ordinary risks assumed by him, but arose from the negligence of the master. It does not appear from the findings that he was chargeable with contributory negligence, which, with the question as to the assumption of the risk, was, upon the facts found, a question for the decision of the jury, and it was found in his favor in the general verdict. There was not such conflict between the special findings and the general verdict as to require the setting aside of the latter. See *Indiana Car Co.* v. *Parker* (1885), 100 Ind. 181; *Salem Stone, etc., Co.* v. *Griffin* (1894), 139 Ind. 141; *Cincinnati, etc., R. Co.* v. *Lang* (1889), 118 Ind. 579; *Louisville, etc., R. Co.* v. *Wright* (1888), 115 Ind. 378, 7 Am. St. 432; *Baltimore, etc., R. Co.* v. *Peterson* (1901), 156 Ind. 364; *Taylor* v. *Evansville, etc., R. Co.* (1889), 121 Ind. 124, 6 L. R. A. 584, 16 Am. St. 372; *Louisville, etc., R. Co.* v. *Hanning* (1892), 131 Ind. 528,

31 Am. St. 443; *City of Ft. Wayne* v. *Patterson* (1900),
25 Ind. App. 547; *Gould Steel Co.* v. *Richards* (1903),
30 Ind. App. 348; *Michael* v. *Roanoke Machine Works*
(1894), 90 Va. 492, 19 S. E. 261, 44 Am. St. 927.

The appellant's motion for a new trial was overruled.
The trial was held in December, 1903, and it was sought
to make the instructions given to the jury and those re-
quested, but refused, parts of the record, and to take and
to save exceptions to the action of the court in giving and
in refusing to give instructions, pursuant to the pro-
visions of section one of the statute of 1903 (Acts 1903,
p. 338, §544a Burns 1905). The court gave written in-
structions numbered from one to twenty-nine, inclusive.
Between instructions twenty-three and twenty-four of this
series is inserted an exception, as follows: "Defendant ex-
cepts to the modification of instructions fourteen, sixteen,
eighteen, nineteen, twenty-one and twenty-three, instruc-
tions tendered and modified by the court before giving to
the jury"—signed by the defendant's attorney. After in-
struction twenty-nine is the signature of the special judge
who presided at the trial. Next is the following, signed
by the attorneys for the appellant: "The defendant excepts
to the giving of each and every one of the foregoing instruc-
tions one to twenty-nine, inclusive, separately and severally
and as a whole." There is then an exception signed by
attorneys for the appellee, which need not be set out. Then
follows a statement, dated and signed by the judge, to the
effect that the appellee excepted to certain of the instruc-
tions given by the court. Then follows a statement, not
signed or dated, which, so far as it relates to exceptions
taken by the appellant, is as follows: "And the defendant
excepts to said instructions twelve, thirteen, fifteen, sixteen,
seventeen, eighteen, twenty and twenty-two." The appel-
lant requested a separate instruction directing verdict in
its favor, which need not be further noticed. The appel-
lant also requested the giving of a series of instructions

numbered from one to ten, inclusive, signed by attorneys for the appellant. Then follows an exception signed by the attorneys for the appellant, dated December 8, 1903 (the date of the verdict), the exception being as follows: "Said defendant, the Inland Steel Company, excepts to the refusal of the court to give to the jury the foregoing instructions numbered from one to ten, inclusive, and the refusal to give each of said instructions. Said instructions were tendered by the defendant prior to the beginning of the argument, and this exception is taken before the close of the term at which said cause was tried." In the motion for a new trial the appellant assigned as reasons therefor, amongst others, "that the court erred in giving instructions from one to twenty-nine, inclusive, and in giving each of said instructions separately and severally," and that the court erred in refusing to give instructions numbered from one to ten, inclusive, asked for by the appellant, and in refusing to give each of said instructions separately and severally. Section 544a, *supra,* provides that "all instructions requested shall be plainly written and numbered consecutively and signed by the party or his counsel. The court shall indicate, before instructing the jury, by a memorandum in writing at the close of the instructions so requested the numbers of those given and of those refused and such memorandum shall be signed by the judge. All instructions given by the court of its own motion shall be in writing and shall be numbered consecutively and signed by the judge. If the court shall modify any instruction requested, the instruction as modified shall be written out at full length and shall be given as one of the instructions given by the court of its own motion, and the instruction as requested shall be refused. All instructions requested, whether given or refused, and all instructions given by the court of its own motion, shall be filed with the clerk of the court at the close of the instruction of the jury. Exceptions to the giving or refusing of instructions may be taken at

any time during the term, and the same may be taken orally and entered upon the record or minutes of the court, or in writing at the close of the instructions requested, or given by the court of its own motion, in which case the party excepting or his counsel shall enter at the close of such instructions a memorandum, which shall be dated and signed, setting forth in substance that such party excepts to the giving or to the refusing, as the case may be, of each of the above instructions, designated by its number. All instructions requested as herein provided, whether given or refused, and all instructions given by the court of its own motion, together with all exceptions taken to the giving or refusing of instructions as herein prescribed, and all entries upon the minutes or records of the court in respect to such instructions and exceptions, shall be a part of the record without any bill of exceptions and as such may be included in the transcript on appeal." The further provisions of the section relate to oral instructions.

Concerning the instructions given, it is to be observed of the exceptions taken in writing that the statute does not contemplate the taking of an exception to the modification of an instruction asked, but the instruction as modified and given is to be regarded as if given by the court of its own motion, and the instruction as requested is to be refused and is to be treated, in the taking of exceptions, as an instruction asked and refused. The exception which it was sought to take by memorandum in writing at the close of the instructions given by the court of its own motion was not dated. The statute provides that it "shall" be dated, as well as signed. If the statement in the record, not signed nor dated, above mentioned, may properly be regarded as an exception taken orally and entered upon the record, it purports to show that "the defendant excepts to all of" eight certain instructions, jointly. The motion for a new trial assigned that the court erred in giving instruc-

tions "one to twenty-nine, inclusive," and in giving each of said instructions. There was no exception properly taken to the giving of each of the instructions given, or to the giving of any separate instruction, and there was no exception properly taken to the giving of instructions one to twenty-nine, inclusive. So, the motion did not assign any cause, properly saved by exception, relating to the giving of instructions. Besides, the appellant in the "points" in its brief does not assail all the instructions given or any of those mentioned in the statment of its exception not signed or dated, before mentioned. With reference to instructions requested, the statute, as we have seen, provides that the court shall indicate, by memorandum in writing at their close, the numbers of those given and of those refused, and that such memorandum shall be signed by the judge. By such method the court itself, without a bill of exceptions, makes the record show which of the instructions requested were given and which were refused. The court may have given some of the instructions asked, without modification, and may have refused others, so far as is shown by the method required by the statute. The written memorandum signed by counsel, stating that the appellant excepted to the refusal to give the instructions, does not sufficiently establish the fact of refusal, which must be authenticated by the signature of the judge.

We have read carefully the appellant's statement of the evidence, upon which it is claimed that the verdict was not supported by sufficient evidence, and that the damages—$10,000—were excessive, and we do not find any occasion for disturbing the judgment on such grounds. The evidence was such that the questions as to whether there was negligence on the part of the appellant, as to whether there was contributory negligence on the part of the appellee, and as to whether he assumed the risk, and as to the amount of damages, were properly within the province of the jury;

and it does not seem that any useful purpose would be subserved by taking the considerable space which would be necessary to set out here the substance of the evidence.

In the appellant's brief some objections are made to the action of the court in the admission of evidence; but while the motion for a new trial, in which such alleged errors are assigned as causes for a new trial, is set out in the brief, there is not in the brief for the appellant, as is pointed out by the appellee, any statement otherwise of so much of the record as presents such alleged errors, or any indication of the places in the record where such action of the court may be found by reference to pages and lines of the transcript, as required by rule twenty-two of this court. See *Perry, etc., Stone Co.* v. *Wilson* (1903), 160 Ind. 435; *Franklin Ins. Co.* v. *Wolff* (1903), 30 Ind. App. 534; *Harrold* v. *Fuenfstueck* (1903), 31 Ind. App. 275.

In the motion for a new trial it was assigned that the answers of the jury to certain interrogatories were severally not sustained by sufficient evidence, and there were a number of assignments, each of which was directed to the answer to a particular interrogatory, questioning it for like reason. Comparing those portions of the evidence recited in the brief of appellant in presenting these questions with the interrogatories and answers in question, if, taking into consideration the forms of the several interrogatories, it can be said that there was evidence upon which any of the answers given by the jury might or should have been different from those returned, the different answers supposable would not necessarily have produced such a material conflict with the general verdict as to require a different judgment. As to such assignments in a motion for a new trial made by the party against whom the general verdict is returned, we need not render any decision in this case, for, if different answers would not have changed the result, there could be no available error; but relative to such

practice see *Ohio, etc., R. Co.* v. *Selby* (1874), 47 Ind. 471, 497, 17 Am. Rep. 719; *Staser* v. *Hogan* (1889), 120 Ind. 207, 227; *Burkhart* v. *Gladish* (1890), 123 Ind. 337, 344; *Chicago, etc., R. Co.* v. *Kennington* (1890), 123 Ind. 409; *Pittsburgh, etc., R. Co.* v. *Ives* (1895), 12 Ind. App. 602.

Judgment affirmed.

[NOTE.—This appeal from the first division of the Appellate Court was perfected December 28, 1905. It was pending in the Supreme Court on March 9, 1907, when the act approved on that date (Acts 1907, p. 237, §3) took effect, whereby subdivision three, §1337j Burns 1901, Acts 1901, p. 565, §10, under which this appeal was taken, was expressly repealed. The repeal of such subdivision was not brought to the attention of the Supreme Court, and this decision is published in view of the fact that the Supreme Court's jurisdiction thereafter may be open to legitimate debate.—Reporter.]