THE BUFFALO.

(District Court, W. D. New York. July 24, 1906.)

1. MASTER AND SERVANT—INJURY OF SERVANT—UNSAFE PLACE TO WORK.

Libelant, who was a longshoreman employed to work on the wharves in loading and unloading ore boats, was sent with others with a scow owned by his employers, to lighter an ore steamer which had stranded. After she had been floated, they proceeded to retransfer the ore from the scow to the steamer, using for the transfer a traveling crane upon the scow, resting on rails fastened to the gunwale on which it moved forward and backward to facilitate the swinging of the buckets to the steamer's hatchways and back. It was dark and as libelant stood up after filling a bucket on the scow he was struck by the crane from behind and thrown against the side of the scow, and throwing his arm over the gunwale to regain his feet, it was crushed by one of the wheels of the derrick. Libelant was inexperienced in such work, was not aware of the danger, nor was any warning given the men of the danger or of the movements of the crane. Held, that he was entitled to such warning and notice under the circumstances shown, and the failure to give them, render the scow liable for his injury.

· [Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 314–316.]

2. DAMAGES—PERSONAL INJURY.

A longshoreman 22 years old, in good health, and earning $25 per week during the season of navigation on the Great Lakes, awarded damages in the sum of $6,000 for an injury resulting in the loss of his arm.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Damages, §§ 235, 383.]

In Admiralty. Suit in rem for personal injury. See 147 Fed.——.

Lawrence J. Collins, John Cunneen, and Thomas C. Burke, for libelant.

Hoyt, Dustin & Kelley and Brown, Ely & Richards, for respondent.

HAZEL, District Judge. The libelant, John McNicholl, was employed by Pickands, Mather & Co., the claimants, to work on the wharf or dock as a helper in loading and unloading ore boats. At about noon, on September 28, 1904, he, with other dock laborers, was directed by his employers to board a tug which soon afterwards took the fuel scow Buffalo in tow and proceeded to the assistance of the steamer Venezuela. The latter, ore laden, was aground on the Canadian shore of Lake Erie, a few miles distant from the port of Buffalo. Upon reaching the stranded steamer the scow moored

alongside and the ore and coal gangs, so-called, immediately began lightering the ore. At about 10 o'clock at night the Venezuela was released from her perilous position. Thereupon the men proceeded to reload the ore from the scow to the vessel. The work of reloading the steamer began from the second bin of the fuel scow, and when that was cleared of ore the reloading proceeded from the after bin. The apparatus or machine used in hoisting the buckets consisted of a traveling crane stationed on top of the fuel scow and operated by steam power. It rested on rails fastened to the gunwale about four to six inches from the sides of the scow, and moved forward and backward thereon to facilitate the movements and swinging of the buckets into the hatchway of the steamer and back onto the scow. A power house, with a window in the side, built on a revolving table was adjusted to operate in connection with the hoisting apparatus. Although the operation and movements of the derrick and the raising and lowering of the buckets were accompanied by loud noises, resembling those of rattling chains, pulleys, and machinery, yet they were not distinguishable by an inexperienced workman in the hold of the scow. Two torches were placed on top of the engine house, only one of which was burning at the time of the accident, such light being on the right side of the power house. Why both torches were not aflame does not appear, though it is practically conceded that in the early evening both were burning. The proofs show that when a bucket of ore was dumped in the hold of the steamer, the boom or arm of the derrick extended athwartships from the scow to the hatchway of the steamer, and the light from the burning torch was therefore turned from the hold where the men were engaged in loading the buckets. Thus their place of work was darkened, and the view thereof of the engineer in charge of the power house was temporarily obscured. Signals were given to the engineer to operate the crane by two workmen, one stationed on the steamer, the other on the scow. These men also hooked on and dumped the buckets, but their duties did not require them to warn the workmen of the movements of the crane. The libelant had just finished loading a bucket of ore, and was standing upright resting on his shovel. Suddenly, and without warning, the crane struck him from behind and violently threw him against the side of the scow. In his endeavor to recover his foothold he threw his left arm over the gunwale of the scow. His arm was crushed by one of the wheels of the derrick which came forward and immediately moved in a backward direction. At the time of the accident the arm of the hoisting device was swung athwartships; a bucket being lodged in the hatchway of the steamer, and the light on the power house was turned aft. No testimony was introduced by the respondent, and it is not clear that it was necessary at this time for the engineer to move the derrick forward and toward the men in order to dump the bucket. Indeed, the claimants contend that the engineer moved the rigging forward at a time when it was unnecessary and that his want of care and precaution was the proximate cause of the injury. I am unable to agree in this contention. The evidence sufficiently establishes that the derrick moved slowly

147 F.—20

on the rails, and in fact only a short distance before the libelant was struck. It is probable that a slight forward movement of the crane was necessary to enable the bucket to descend without interference into the hatchway of the steamer. This reasonable assumption certainly will not permit holding that the engineer was negligent for moving the apparatus forward, but seems to emphasize the claim of the libelant that the scow was at fault; she having omitted to warn him of the movements of the derrick and of the attending dangers.

Libelant had never previously been on a fuel scow, and was wholly inexperienced in work of this character, and was not familiar with the manner of operating the derrick. He was not at the time of his employment, nor subsequently, warned of any dangers of his occupation. As there was about 12 to 18 inches of ore in the bottom of the scow when the accident happened, the head and shoulders of the libelant, who stood upright, reached above the rails. It cannot be assumed that he had reason to know that the crane would come over the place where the men were engaged in filling the buckets. Moreover, the night was dark, and the men were working with their backs toward the derrick. The place was manifestly a dangerous one in which to work as the nature of the accident and its occurrence would impliedly indicate. Mather v. Rillston, 156 U. S. 391, 15 Sup. Ct. 464, 39 L. Ed. 464. To an inexperienced workman the dangers of the employment, as a matter of law, cannot be held to have been obvious. Upon this point the testimony of libelant that he had never before performed work of this character and did not know that the derrick moved on the rails is entitled to weight. His appearance on the witness stand and his manner of giving testimony indicated that he is of dull intellect, and merely appreciated the fact that he was hired to fill the buckets with ore, and did not exercise the faculty of observing and understanding the mechanism by which the hoisting and dumping of the buckets was accomplished. Therefore, I conclude that the dangers from the moving derrick were not apparent to him, and that he was entitled to be informed of the dangers of his employment, and warned of those which threatened him from the forward movements of the derrick. The principle of a safe place in which to work, or of being permitted to work in a dangerous place, and, therefore, entitled to notice and warning, would seem to have application here. As already intimated, this case is not one where the proximate cause of the accident was the negligence or the presumed neligence of the engineer, who was probably a fellow servant; both he and libelant being engaged in the work of a common employer. Abundant authority exists for upholding the proposition that where a longshoreman in the employ of an independent contractor is injured by the negligence of a winchman, an employé of the vessel, the latter is liable. The Slingsby (D. C.) 116 Fed. 227, affirmed 120 Fed. 748, 57 C. C. A. 52; The City of San Antonio (C. C. A.) 143 Fed. 955. But here it must be considered that the libelant was temporarily employed to load buckets of ore from a scow having attached the rigging heretofore described. His original employment was that of a dock laborer, and it seems to the court that as he was directed to work in a different

field, he was entitled to rely upon the assumption that such employment would not expose him to any greater hazards or dangers than those which he was prepared to encounter. In addition to notice of the dangerous character of the employment it was the duty of the claimants, in the circumstances here presented, to give such proper and suitable warning of the forward movements of the derrick and of its proximity to the place where the libelant was at work as to reasonably safeguard and protect him from injury. The Pioneer (D. C.) 78 Fed. 600; Western Elec. Co. v. Hanselmann, 136 Fed. 564, 69 C. C. A. 346, 70 L. R. A. 765; Michael v. Roanoke Machine Works, 90 Va. 492, 19 S. E. 261, 44 Am. St. Rep. 927; The Magdaline (D. C.) 91 Fed. 798. The facts in the cases cited are not like the facts and circumstances in suit but the principle there announced is not inapplicable.

The libelant contends that the scow was also negligent, because of her failure to furnish suitable lights. Upon this proposition it may be said that it undoubtedly was the duty of the scow to furnish sufficient lights to enable the workmen to properly and safely perform their work. I think the claimants discharged their full obligation in that regard, means for ample lighting having been supplied, and it may be fairly presumed that the workmen would have called for additional light had they deemed more light necessary. Standing alone, the absence of better lighting facilities is not thought to constitute such negligence on the part of the scow as to render her responsible for the accident had the failure to furnish lights been the proximate cause therefor.

The claimants having failed in their obligations to inform libelant of the dangers of the work and warn him as hereinbefore indicated, a recovery for damages to compensate for the injuries sustained must follow. Libelant, not being guilty of contributory negligence, no reason exists for reducing the amount of the damages to which he is fairly entitled. He was about 22 years of age, was healthy, strong, and earned $25 per week during the season of navigation on the lakes. After being out of work for upwards of one year he is now earning $1 per day, and perhaps will never be able to earn a greater sum. That he suffered much pain as a result of the accident is self-evident. The amount to be awarded in a case of this description is difficult of determination, but considering all things, i. e., the loss of his arm, the expense of his cure, the loss of time, the depreciation in earning capacity, I think $6,000 would not be an excessive award.

A decree, therefore, will be entered for that amount, with costs.