---

GALLAGHER v. McMULLEN et al.

(Supreme Court, Appellate Division, First Department. February 11, 1898.)

MASTER AND SERVANT—NEGLIGENCE OF FELLOW SERVANT—PERSONAL INJU-RIES.

Deceased was employed by defendants, inside a caisson fitted over the pillars of a bridge, which were filled with masonry, and were being blasted as the caisson sank. Deceased had been employed for two days, during which blasting was carried on continuously. When a blast was about to be fired, notice was given the men. At the time deceased was killed, the man firing the blast did not give sufficient notice to enable deceased to reach a place of safety. *Held*, that his death was caused by the negligence of a fellow servant, for which defendant was not responsible.

Barrett, J., dissenting.

Appeal from trial term.

Action by Lizzie Gallagher, as administratrix of the estate of Michael Gallagher, against Arthur McMullen and another, to recover damages for the death of plaintiff's intestate, caused by defendants' negligence. From a judgment for defendants, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, BARRETT, PATTERSON, and INGRAHAM, JJ.

F. G. Wild, for appellant.

H. C. Smyth, for respondents.

VAN BRUNT, P. J. This action was brought to recover damages for the death, on the 19th of May, 1895, of one Michael Gallagher, the plaintiff's intestate, alleged to have been caused by the negligence of the defendants. The decedent was at that time in the employ of the defendants, engaged as a laborer in a caisson which was being sunk in the Harlem river at 130th street in the city of New York, for the purpose of building foundations for a bridge across the Harlem river at Third avenue. This caisson was an octagonal-shaped box without any bottom. Its extreme diameter was 78 feet, with a center or core 30 feet in diameter, also eight-sided. As the caisson sunk through the bed of the river, this core became filled with earth. The caisson rested on the bed of the river, and was air-tight, air being supplied to the workmen by means of air-pumps. The work was done in the outside octagonal chamber, and the caisson was lowered by the men shoveling out the dirt and débris on the bottom of the river, and hoisting it to the top in buckets, until a considerable space was hollowed out below the caisson, when the compressed air was let out, and the caisson sunk to the new level, when the operation was repeated. The outside octagonal chamber was divided by bulkheads into eight chambers, and each of these principal chambers was subdivided by single timbers midway between the crosswalls. All the chambers in the caisson were connected by openings in the bulkheads. The caisson had been fitted over the old bridge pillars, 11 in number, which came between the outside and inside edge of the respective chambers. Upon the roof or deck was built masonry, the weight of which sunk the caisson. As the caisson went down, those on top added to the masonry. At times the bottom of the cross walls touched the ground; at other times the men dug or cleared the ground away, so that there was some space between the ground and the cross walls. The workmen got into the caisson and out again through four manholes or locks which went into the caisson at various points equidistant. These locks were formed of iron cylinders with doors, through which ran iron ladders upon which the men could mount. These locks were so distributed that there was one to every two principal chambers. The iron pillars of the old bridge which were included within the principal chambers were filled with masonry, and were being blasted as the caisson sunk. The decedent had been in the employ of the defendants, working in

this caisson, for two whole days prior to the day of the accident. His work was to shovel and clear away the ground so as to permit the sinking of the caisson. On the day of the accident the space underneath the bulkheads was about three feet, and the men, in getting about the caisson, went under these bulkheads. As above stated, there were openings in the bulkheads through which the men could go in getting about the caisson when its position was such that there was not room enough to go beneath, but at the time of the accident these were not used, as it was easier to go underneath. During the time the decedent had been employed in the caisson, blasting had been going on almost continuously. On the day of the accident two workmen, Crowley and Carroll, prepared a blast in one of the cylinders which was being removed. The cylinder projected about $2\frac{1}{3}$ feet from the level of the ground, and immediately over it was one of the cross-beams forming one of the dividing walls. The decedent was in the section next to the one where the blast was located, in a southerly direction from it. There was no covering over the blast. It would appear from the evidence that sometimes the blast was covered, but usually it was not covered; that the men were accustomed to protect themselves from the effects of the blast by getting upon the side of the core opposite to that where the blast was located. It appeared that, after the blast in question had been prepared, Crowley went in a northerly direction calling, "Fire!" to warn the men to get into a place of safety; and Carroll went to his battery, which he had placed upon the cross-beam just south of the place where decedent was working. When Carroll reached the battery he shouted "Fire!" and then plunged the battery, which set off the blast. The decedent at this time was in the act of stooping to get underneath the bulkhead in order to get out of the way of the blast, and while in this position was struck by a missile from the blast, and killed. There was some evidence tending to show that there was material near the caisson which occasionally had been used for covering the blasts, and which the employés could have used for that purpose. Upon this state of facts the court directed a verdict in favor of the defendants, and from the judgment thereupon entered, and from an order denying a motion for a new trial, this appeal is taken.

In the disposition of this appeal it does not seem to be necessary to discuss the question, which was argued at considerable length by counsel, as to whether the defendants had performed their duty in furnishing material for the purpose of covering these blasts, because the decision of that question is not needed to enable us to come to a conclusion as to the correctness of the action of the court in directing a verdict. It seems to us that the direction was correct, for the reason that the injury which the decedent received, and which resulted in his death, was occasioned by the negligence of his fellow servant Carroll, who set off the blast. It appears from the evidence in the case that it was not usual to cover the blasts, but that the men were accustomed to go upon the opposite side of the caisson to be out of the reach of missiles therefrom; and that the work had been conducted in that way from its

commencement until this time, when it was nearly completed; and there is nothing to show that any accident happened in consequence, or that there was any impropriety in that method of conducting the work. It is true that there was evidence that some of the missiles from the blasts rebounded after striking the outside edge of the caisson; but ·it also appears that their force was spent, and there is no evidence that any injury ever resulted. It appears that it was the custom of the two persons having charge of the blasts to go in different directions around the caisson to give the men warning, and that the men either went underneath the bulkheads, if there was sufficient room, or through the openings in the bulkheads, into the further chambers, and were thus secure from the flying missiles. Upon the occasion in question it appears that Carroll gave no adequate warning of the firing of the blast. It would seem that the moment the blast was loaded, and he had made the connection with the electric wires, and got back to his battery, he shouted "Fire!" and immediately set the blast off, giving no one an opportunity to reach a place of safety; and that the decedent was in the act of going underneath the bulkhead when he was struck. It is apparent that this precipitancy of Carroll in setting off the blast without giving the decedent an opportunity to get out of the way was the cause of the injury. Carroll was clearly a fellow servant of the decedent, and it was his negligence, evidently, that caused the accident. Under these circumstances, we do not see that there was any question for the jury. The ordinary method of conducting operations was departed from, in that no opportunity was given for the men to escape, probably because Carroll did not realize that, although there was a bulkhead between the decedent and himself and the blast, the bottom of the bulkhead was· from 3 to 3½ feet from the ground, and missiles could fly underneath, as they did, and inflict injuries on persons who might be in the next chamber. It thus seems to be manifest that it was the negligence of Carroll which caused the injury, for which the defendants were not responsible. The evidence shows that the decedent had worked there for two days prior to the accident; that blasts had been continuously occurring; that he must have been familiar with the situation; and that he was evidently aware of the fact that it was necessary for him to go on the other side of the core to be protected from the blast, because he was in the act of doing so when he was killed.

Upon a consideration of the whole case, therefore, we are of opinion that the direction was right, and that the judgment and order appealed from should be affirmed, with costs.

PATTERSON, INGRAHAM, and McLAUGHLIN, JJ., concur.

BARRETT, J. (dissenting). I think the main questions in this case were for the jury. That the evidence warranted the conclusion that the decedent was free from contributory negligence cannot seriously be questioned. The principal question relates to the defendants' negligence. Their employés in the caisson worked in

an octagonal space, divided by bulkheads into eight principal chambers. Each of these chambers was about 24 feet in breadth, 12 feet long on the inside, 31 feet on the outside, and 7 feet high. There were 30 to 35 men in the caisson on the day of the accident. Blasting was carried on inside this space. Sometimes the blasts were covered; that is, wood and other objects were piled around the spot, to obstruct the flying fragments, and deaden their force. But oftener there was no covering; and this was the case upon the day of the accident. I think it was, upon all the facts, a question for the jury whether it would not have .been a reasonable precaution for the defendants to cover their blasts. The space was not a large one. There were many men in it, and blasts were frequent. Fragments from them could and did rebound from the walls into all parts of the space, though with spent force. In addition, it was often necessary, in the course of the work, to dig the ground from under the caisson, leaving a space between the bulkheads and the river bottom, through which the missiles might fly. One rebound of such a missile might, it would seem, carry it half way around the caisson. It thus appears that the workmen were more or less exposed to danger at every blast. This danger was certainly enhanced by leaving the blasts uncovered. In view of all these circumstances, and of the simple and inexpensive nature of the precaution, I do not see how it can be said, as matter of law, that the defendants were not bound to have adopted it. This view is strengthened by the evidence in the record that blasts had been covered in similar work elsewhere, and that sometimes they were covered even in this very caisson. That this was perhaps the first accident here from such a cause was a fact to be taken into consideration by the jury, but it was not conclusive. There does not even seem to be distinct, affirmative proof on this head by the defendants. But, if there were, it could not be said that the fact that there was no accident during a period of about three weeks (the length of time that blasting had been conducted in the caisson) conclusively proved the appliances to be proper and sufficient. But it is said (and this view seems the main, if not the sole, basis of the result arrived at by the presiding justice) that, assuming this omission to have been a negligent one. it had nothing to do with the accident. That, it is said, was caused solely by the negligence of Carroll in setting off the blast prematurely. Carroll's negligence doubtless contributed to the accident, but was it the sole proximate cause thereof? Not unless it can be said, as matter of law, that the stone which killed the deceased would have struck and killed him just the same if the blast had been covered. It is manifestly impossible to say this. He was some 25 feet away, and the covering might, and in all probability would, have deflected the course of this and other missiles so that he would have escaped. Hence, so far as we can tell, the accident would not have happened but for the concurrence of two things,—Carroll's negligent act and the defendants' negligent omission. An indisputable rule of law requires that the defendants be held liable in such a case. If negligent, they cannot escape liability because the negligence of a serv-

ant concurred in causing the accident. Coppins v. Railroad Co., 122 N. Y. 557, 25 N. E. 915; Stringham v. Stewart, 100 N. Y. 516, 3 N. E. 575; Ellis v. Railroad Co., 95 N. Y. 546.

The other reasons urged by the defendants are not tenable. It cannot be said, as matter of law, that the decedent assumed the risk of injury from uncovered blasts. He had been at work but two days before he was killed, and at a branch of the work having no connection with the blasting. So far as appears, he had, prior to the blast in question, no knowledge of the details of this work. In fact, it does not even appear distinctly that covers were not used during these two days. The proof of knowledge of the precise risk run should be very clear and unequivocal to have the effect claimed, and it is quite insufficient here. The point that the defendants fulfilled their duty by providing material with which to cover the blasts is also answered by the state of the proof, which discloses an issue of fact upon that subject.

I think that the judgment should be reversed, and a new trial ordered; costs to abide the event.