## TIVNAN v. KEAHON.

(Supreme Court, Appellate Division, First Department. January 11, 1907.)

MASTER AND SERVANT—INJURY TO SERVANT—VICE PRINCIPAL.

One through whom the proprietor of a livery stable conducts it, and who is the manager and superintendent thereof, and employs help, is the vice principal of the master, for whose negligence in failing to instruct a common laborer how to start an engine, great danger being attendant thereon unless it was started properly, the master is liable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 422, 437, 440, 448.]

Houghton and Scott, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Patrick Tivnan against Patrick H. Keahon. From a judgment on a verdict for plaintiff and from an order denying a motion for new trial, defendant appeals. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Frederick E. Fishel, for appellant.
John E. O'Brien, for respondent.

McLAUGHLIN, J. On the 13th of August, 1901, the plaintiff went to work at defendant's livery stable, having been employed to perform the duties usually devolving upon laborers in such establishments by Daniel Keahon, defendant's brother, through whom the business was conducted. Some two weeks later, following the instructions of Daniel Keahon, plaintiff lighted a gas engine in the basement of the building and a few minutes thereafter, with three other employés, started the engine, and in doing so received the injuries complained of, which necessitated the amputation of an arm.

The evidence is sufficient to sustain the finding of the jury that the danger attendant upon the work of starting the engine necessitated the giving of special instructions to one delegated to perform it, and that, lacking such instructions, plaintiff carried out his orders as would a reasonably prudent man.

The judgment appealed from must be affirmed, unless it be held that the act of Daniel Keahon in directing the plaintiff to assist in starting the engine was that of a co-servant. The complaint alleges:

"(1) That on or about the 13th day of August, 1901, and at the times hereinafter mentioned, defendant was the owner and proprietor of a boarding stable at Nos. 108 and 110 Tenth avenue, in the city of New York, borough of Manhattan, and conducted the same through his brother, Daniel Keahon, who was the manager and superintendent thereof, and that on or about said 13th day of August, 1901, said defendant, through the aforesaid Daniel Keahon employed plaintiff at a salary to work at said stable."

The answer admits this allegation, which establishes that Daniel Keahon, so far as the management of the business was concerned, was the alter ego of the defendant. Indeed, if the defendant had testified at the trial to the relation which Daniel Keahon bore to him, it is difficult to imagine in what way he could have more clearly and con-

cisely stated facts which would have made the latter his alter ego in the entire management of the business.

Whatever apparent discrepancies exist in reported decisions in the disposition of cases arising under circumstances somewhat similar to the one under consideration have been caused by the varying character of the acts of the representatives rather than by any repudiation of the doctrine that the master is liable for any faults of omission or commission by the person or persons acting for him. This apparent discrepancy or misconception results probably from the fact that there is usually embodied in the alter ego a dual character: (1) That of the servant whose duties, among those put upon the other employés in the prosecution of the business are certain and fixed; and (2) that of the representative of the master, in which capacity there exists greater and a more undetermined latitude of authority.

But a master cannot, by delegating to another the duty which rests upon him, of furnishing his employés with a reasonably safe place in which to work and reasonably safe and suitable tools, implements, appliances, and machinery with which to do his work, excuse himself from liability (Eastland v. Clarke, 165 N. Y. 420, 59 N. E. 202, 70 L. R. A. 751; Benzing v. Steinway, 101 N. Y. 547, 5 N. E. 449; Stringham v. Stewart, 100 N. Y. 516, 3 N. E. 575; Pantzar v. Mining Co., 99 N. Y. 366, 2 N. E. 24) any more than he can excuse himself from the duty which devolves upon him to instruct a servant theretofore unskilled to operate dangerous machinery (Brennan v. Gordon, 118 N. Y. 489, 23 N. E. 810, 8 L. R. A. 818, 16 Am. St. Rep. 775; Strauss v. Haberman Mfg. Co., 23 App. Div. 1, 48 N. Y. Supp. 425; Fox v. Le Comte, 2 App. Div. 61, 37 N. Y. Supp. 316, affirmed 153 N. Y. 680, 48 N. E. 1104). The rule which exempts a master from liability for the negligence of one to whom he has delegated the power to conduct a business enterprise, or a branch of it, is based upon the theory that the negligence of the person acting for the master is the act of a servant having no authority except to properly discharge the duties assigned to him, and not the act of the master.

But this rule does not apply to the question here presented because the neglect of Daniel Keahon, in directing the plaintiff to start the engine, as well as in his failure to give instructions as to the danger in doing so, was that of the master. Great danger was to be encountered in starting the engine unless started in a proper way. This was known to the master but unknown to the servant. Therefore, the former was obliged to make known such fact to the latter and to instruct him as to the proper manner of starting the engine, to the end that such danger might be avoided. Brennan v. Gordon, supra. This obligation rested upon Daniel Keahon because he had been intrusted by the defendant with the management of the business, and in this respect was his alter ego (Corcoran v. Holbrook, 59 N. Y. 517, 17 Am. Rep. 369), and for his failure to properly discharge his duties as such, defendant is liable.

The judgment and order appealed from must be affirmed, with costs.

PATTERSON, P. J., and LAUGHLIN, J., concur.

HOUGHTON, J. (dissenting). I dissent from an affirmance of this judgment. I do not think the allegation of plaintiff's complaint, admitted by defendant's answer, should be interpreted as alleging that the defendant had surrendered all control of his business and delegated all his duties and powers to his brother Daniel. The allegation is that, at the time of the hiring and the subsequent accident, the defendant was owner and proprietor of a boarding stable "and conducted the same through his brother, Daniel Keahon, who was the manager and superintendent thereof, and that on or about said 13th day of August, 1901, said defendant, through the aforesaid Daniel Keahon, employed plaintiff at a salary to work at said stable." That it was not so understood is manifest from what took place on the. trial when Daniel Keahon was on the stand. The defendant's counsel asked him what he did for his brother in August, 1901. This was objected to on the ground that it was alleged by the complaint and admitted by the answer that he was conducting the business on behalf of his brother as foreman or superintendent. The defendant's counsel pointed out that the admission related only to the time of hiring and to the time of the accident, and the court remarked that that was all that was necessary and sustained the objection. The fair and liberal interpretation of the allegation is that the brother, Daniel, was the superintendent of defendant in conducting the boarding stable, with power to hire and discharge men.

The particular work for which plaintiff was employed was to wash wagons and trucks, clean stalls and horses, and cut wood. There is no claim that the defendant did not furnish the plaintiff with a safe place in which to do this particular kind of work which he was specially hired to do. Nor is there any claim that the gas engine in the cellar was not a perfect machine and in perfect repair. The only ground of negligence is that the superintendent of defendant, being temporarily short of help around the barn, took plaintiff from the work which he was hired to do and sent him to the cellar to do the alleged hazardous work of starting the engine without warning him of the danger that he might encounter of getting his arm caught in the fly wheel if it started backward instead of forward. It is true that there is no evidence that the defendant, the employer, was about the barn frequently or occasionally, and thus knew the work that plaintiff was employed to do, but, in the absence of proof that he never came near the premises and knew nothing of the manner in which the business was being conducted, it must be assumed, I think, that he knew for what particular work plaintiff was employed. In the absence of proof, it must be assumed that the defendant, the employer, did not know that his superintendent was taking the plaintiff from his regular employment and directing him to serve at a more hazardous work.

Conceding that the dangers attending the starting of the gas engine were not obvious, and that plaintiff was entitled to a warning concerning them, I think the failure of the superintendent to give the warning, if one was necessary, was the negligence of a co-servant and not that of the defendant, the master. If the plaintiff had been hired to start the gas engine and there was danger in the work, and he had had no experience in it, then very likely the failure of the superintendent to

give the warning would have been the failure of the master. But he was hired for a work in which there was no danger, and was taken from that work by the superintendent and put to a more hazardous employment, without the knowledge of the master, and such act, it seems to me, was a mere detail of the work for any negligence concerning which the master is not responsible.

One of the grounds upon which recovery was denied in Crown v. Orr, 140 N. Y. 450, 35 N. E. 648, was that, if the plaintiff, who was an infant, was directed by the foreman to perform another service than that for which he was employed, and one specially dangerous, without sufficient instruction, the fault was not that of the master but of a co-servant. In Hussey v. Coger, 112 N. Y. 614, 20 N. E. 556, 3 L. R. A. 559, 8 Am. St. Rep. 787, the defendant did not personally supervise the work but employed a superintendent, competent and experienced, who had general charge of the work and authority to procure materials and engage the necessary workmen. An accident happened because the superintendent directed too few men to lift a heavy hatch. The master was held not liable notwithstanding such act of the superintendent. In the present case the proof discloses that the defendant had hired sufficient men of experience to start the engine, but they did not happen to be about the barn at the time the superintendent desired it started.

This action is not under the employers' liability act, but at common law. In such an action a servant who sustains an injury from the negligence of a superior agent engaged in the same general business cannot maintain an action against the common employer, although he was under the control of the agent and could not guard against his negligence. Keenan v. N. Y., L. E. & W. R. R. Co., 145 N. Y. 190, 39 N. E. 711, 45 Am. St. Rep. 604; Gallagher v. McMullin, 25 App. Div. 571, 49 N. Y. Supp. 734.

There is no claim that the superintendent was not competent; and hence the master furnished not only a competent superintendent, but a safe place for plaintiff to perform the work for which he was hired, as well as sufficient competent men to do the work which plaintiff was directed to do. The master did not know, and could not apprehend, that his superintendent would take the plaintiff from his regular work and put him to a hazardous one without instruction. In failing to give the instruction, the superintendent did not stand in place of the master as he would with respect to keeping the place to work reasonably safe and the machinery in repair. Under the circumstances disclosed, the negligence, if any there was, was that of a co-servant, although of a higher grade, and the case appears to me to be governed by a long line of decisions of which those above referred to and Grispin v. Babbitt, 81 N. Y. 516, 37 Am. Rep. 521, Loughlin v. State of New York, 105 N. Y. 159, 11 N. E. 371, Cullen v. Norton, 126 N. Y. 1, 26 N. E. 905, Perry v. Rogers, 157 N. Y. 251, 51 N. E. 1021, Maltbie v. Belden, 167 N. Y. 307, 60 N. E. 645, 54 L. R. A. 52, and Madigan v. Ocean Steamship Nav. Co., 178 N. Y. 242, 70 N. E. 785, 102 Am. St. Rep. 495, are examples. O'Brien v. Buffalo Furnace Co., 183 N. Y. 317, 76 N. E. 161, is not to the contrary, for that case turned

upon the permitting the continuance of an act obviously dangerous to all of defendant's servants.

The defendant has died since the judgment. It may be possible that on a retrial the plaintiff could establish a cause of action. That he may have an opportunity to do so under the provisions of section 764 of the Code of Civil Procedure, the reversal should be on questions of law only.

The judgment should be reversed on questions of law only, and a new trial granted, with costs to the appellant to abide the event.

SCOTT, J., concurs.