## GUST ANDERSON v. PITTSBURGH COAL COMPANY and Another.[1]

July 23, 1909.

Nos. 16,075—(100).

**Swing of Coal Bucket.**

Plaintiff, engaged as a coal heaver in unloading the hold of defendant's boat, was knocked down by a coal bucket operated by a crane, which had acquired "too much swing." The hatch tender signalled the hoister to stop it and drop it down. He did not warn plaintiff, as his duty and custom required. The hoister dropped the bucket. It struck plaintiff, and produced the injuries for which recovery is sought. It is *held:*

**Question for Jury.**

1. Whether the proximate cause of the injury was the dropping of the clam shell upon plaintiff or the previous swinging of the bucket was a question of fact for the jury.

**Vice Principal.**

2. The failure of the hatch tender to give plaintiff the customary warning before the bucket was lowered was the negligence of a vice principal, and not of a fellow servant.

**Foreign Decisions — Fellow Servant.**

(a) The value of a particular decision as a precedent is to be determined by reference, not only to identity of its facts with the facts in issue, but also to identity of the principle upon which that decision is based with the pertinent rules established in the jurisdiction in which the controversy is pending. Decisions of other courts that under given circumstances a servant is a fellow servant of another are not persuasive in this court, unless the criterion by which the relationship is determined is the same as in this jurisdiction,

[1] Reported in 122 N. W. 794.

namely, that a fellow servant is one to whom the master has not intrusted the performance of some absolute nonassignable duty. Portance v. Lehigh, 101 Wis. 574, 77 N. W. 875, Cheeney v. Ocean, 92 Ga. 726, 19 S. E. 33, Hermann v. Port Blakely Mill Co. 71 Fed. 853, distinguished.

### Delegating Master's Duty to Servant.

(b) Subject to restrictions arising under particular circumstances, the general rule is "that the delegation to an employee of the duty of taking such measures as are within the power of the master to protect employees against danger while at work cannot relieve the master from liability if the employee to whom such duty is imputed does not exercise reasonable care in its discharge."

### Warning of Danger.

(c) While the duty of the master to warn the servant of impending danger, as distinguished from the duty to instruct a youthful or inexperienced servant, may not under all circumstances be absolute and nonassignable, the general rule is that, when an employee is at work in a place safe in itself, but which by virtue of some independent work done for the master's purposes becomes dangerous unless prior warning of impending danger be given, and when the master has required such warning to be given, or has customarily assumed to give such warning by an employee, the person charged with that duty is a vice principal.

### Verdict Not Excessive.

3. A verdict of $8,000 for plaintiff's injuries, whereby his leg was shortened about three inches, a curvature of the spine was produced, and a permanent inability to do hard work resulted, in addition to other injuries, is held not to have been so excessive as to justify a new trial.

Action against the Pittsburgh Coal Company and Michael Ladzinski in the district court for St. Louis county to recover $20,275, for personal injuries received while in the employ of defendant coal company and working in the hold of a vessel loaded with coal, upon which vessel its co-defendant was employed as hatch tender. The negligence alleged was that defendants carelessly neglected to give plaintiff warning of the contemplated act of dropping the coal bucket and neglected to give him any opportunity to escape therefrom but negligently signalled the hoister to drop the bucket upon the plaintiff. The answer of the coal company alleged the contributory negligence of plaintiff, that the injury was caused by a fellow servant and that plaintiff assumed the risk. The case was tried before Cant, J., and a jury which

rendered a verdict of $8,000 in favor of plaintiff.   From an order denying a motion for judgment in favor of the defendant coal company or for a new trial, defendant company appealed.   Affirmed.

*E. C. Kennedy,* for appellant.

*John Jenswold, Jr.,* for respondent.

JAGGARD, J.

Plaintiff and respondent, a coal heaver, was engaged in unloading defendant's boat, loaded with coal.   Clam shells, or buckets, four feet wide and seven feet long when closed, were lowered into and raised out of hatchways by means of wire cables running over sheaves at the end of booms which were projected over the vessel.   The boat being unloaded was provided with an upper and a middle deck.   At the time of the accident here involved the coal was being taken from the hold. The machinery was operated by a man known as a "hoister," who received, from a man on deck known as a "hatch tender," signals by which his actions were governed in controlling the movements of the clam shell.   Immediately before the accident the clam shell had been lowered and was swung by plaintiff to a place in the hold of the boat. The clam shell was closed under the coal.   Plaintiff was steadying it. The clam shell caught a part of the floor of the boat.   Additional power was put on the hoisting apparatus.   When the bucket was raised it carried along a part of a board.   It swung against plaintiff, and knocked him down on the coal in the hold, but did not injure him. The bucket was "swinging too far away."   It had acquired too much swing, so the hatch tender signalled the hoister to stop it, and shouted, "Down the bucket!"   The hoister dropped it on plaintiff's right hip while he was lying on the coal and before he could get away.   The hatch tender did not give the signal or warning required by his prescribed duty and the custom then current.   The bucket was raised, when some one "hollered," and was swung over to the other side.   It then swung back to the place where plaintiff was, and hit him again on his left leg above the knee.   The clam shell lay on the top of him a minute or so, and then was moved to the center of the hatch and was lowered down.   According to the plaintiff's testimony the hatch tender could have seen plaintiff while he was lying on the coal after having

been struck by the clam. The hatch tender testified that he looked at the hoister when he gave the signal to lower the bucket. He did not look down where the plaintiff was. He had, however, seen the plaintiff take hold of the clam when it descended through the hatchway and push it to one side. The testimony as to whether he saw plaintiff when the clam shell was swinging is not clear. The jury returned a verdict of $8,000. This appeal was taken from the order of the trial court denying defendant's alternative motion.

1. Whether the proximate cause of the injury was the dropping of the clam shell upon plaintiff or the previous swinging of the bucket was a question of pure fact. The jury was entitled to believe the plaintiff's version. Its finding for him should not be disturbed because of this question.

2. The principal contention of defendant is that under the rules laid down by the authorities it had performed its absolute duty to plaintiff, that the failure of the hatchman to give warning was a mere detail of the work, and that therefore he and plaintiff were fellow servants.

A. The rules of law as to how far the master may delegate his duty to his servant appear in a measure to have been rather rendered uncertain than to have been definitely determined by the mass of decision on this subject. The opinion has been frequently expressed as in Brabbits v. Chicago, 38 Wis. 289–299 (1875): It would be monstrous to allow [the master] to relieve himself from all liability for a breach of that duty [to the servant] by simply charging one of [his] inferior officers or servants with its performance. This principle has been reiterated times without number by the Wisconsin court and by almost every court in the country. An especially clear statement of the master's duty to protect in fact—to actually do what circumstances require, and not merely to employ another to do for him—will be found in Toledo Brewing & Malting Co. v. Bosch, 101 Fed. 530, 41 C. C. A. 482. And see 2 Labatt, Master & S. §§ 552, 553, 556. To universally apply this principle to the master's duty concerning a safe place would necessarily impose liability on the master in the great majority of cases, and, it has been thought, would practically eliminate the doctrine of fellow servant. Courts have properly refused

to go to this extent. In consequence such application has been restricted, usually with reason, but sometimes to an unjustifiable extreme. Thus it has even been held that "the positive, personal and non-delegable duty of a master to provide a reasonably safe place in which, and reasonably safe appliances with which, to work, or a reasonably safe method of doing the work, is a duty of construction and provision, and not of operation." Kinnear Mnfg. Co. v. Carlisle, 152 Fed. 933, 82 C. C. A. 81. And see Pennsylvania Co. v. Fishack, 123 Fed. 465, 59 C. C. A. 269.

The authorities as to when and how far the master may by selection of proper servants and by adequate directions to them to warn, as distinguished from instructing other servants of danger, secure exoneration from harm inflicted on such other servants by such other failure in fact to warn, are certainly not in harmony. 26 Cyc. 1337. In Western Electric Co. v. Hanselmann, 136 Fed. 564, 566, 69 C. C. A. 346, 70 L. R. A. 765, Townsend, J., expresses the opinion that they are in "irreconcilable conflict." The decisions which have refused to hold that the giving of signals is a duty which cannot be delegated will be found collected in 2 Labatt, Master & S. § 607. Many other cases in which failure to warn servants as to danger arising from the execution of the details of the work was held to be the wrong of a fellow servant will be found collected in a note by Mr. Labatt. 54 L. R. A. 120.

Defendant's contention is that this case is supported, moreover, not only by a considerable group of these more general authorities, but also by a number of cases which involved facts substantially identical with those in the case at bar. Thus it was held in Portance v. Lehigh, 101 Wis. 574, 77 N. W. 875, 70 Am. St. 932, that the workman and the hatchman were fellow servants, because the master who properly selects and instructs a man to give notice to the other employees of the movements of the apparatus in unloading coal from a vessel is not responsible for his failure to give warning. To the same effect, see Ocean v. Cheeney, 86 Ga. 278, 12 S. E. 351; Cheeney v. Ocean, 92 Ga. 726, 19 S. E. 33, 44 Am. St. 113; Hermann v. Port Blakely Mill Co. (D. C.) 71 Fed. 853. Defendants refer us also to cases decided by this court involving traveling cranes which will subsequently be considered. There are, moreover, other decisions of this court tending directly to sustain defendant's contention.

B. Notwithstanding this formidable array of general, specific, and local authorities, we are none the less of opinion that the proper conclusion is that the workman in the hold and the hatchman were not fellow servants.

(a) The specific decisions are not controlling as authority nor convincing on principle. The Wisconsin case is not cogent for a number of reasons. The specific authorities which it cites fail to support the conclusion it reaches, with the exception of Ocean v. Cheeney, which it quotes as reported in 12 S. E. 351. That report contained the statement of the conclusion that the laborer and the hatchman were fellow servants, but without explaining why. The Wisconsin court's attention was evidently not called to the fact that, about six years before the decision of the Portance case, Cheeney v. Ocean came up again for decision. See 92 Ga. 726, 19 S. E. 33, 44 Am. St. 113. In this report the court reasoned at length and reached a conclusion much more liberal to the servant, although, as will subsequently herein appear, it did not in so many words overrule the earlier case. In the Portance case, moreover, the machinery was started without signal; in the case at bar, upon the signal of the hatchman. The court said: "No matter what duties the hatchman may have had to give warning of danger, they could have no application to a danger like this, the effect of which * * * was as instantaneous as his earliest possible discovery of it." In the case at bar the hatchman could have given the signal before the machinery was started. More general reasons for regarding the opinion in this case, or in Hermann v. Port Blakely Mill Co., or in Cheeney v. Ocean, as of little weight, will immediately follow.

(b) In point of fact, the view these and allied authorities have taken is in large measure a necessary product of the transition in judicial opinion as to what is the criterion by which it shall be determined who is and who is not a fellow servant. The decisions of courts of other states that, under given circumstances, one servant is a fellow servant of another are not controlling on this court, unless the criterion by which the relationship is determined is the same as in this jurisdiction, namely, that a fellow servant is one to whom the master has not intrusted the perform-

ance of some absolute nonassignable duty of the master. The federal courts, having originally announced the test of superior servant, or the doctrine of control, then rejected it, and adopted the separate department theory. It has been quite generally thought that this theory has been in turn largely abandoned and the current test of a vice principal adopted. But in Peters v. George, 154 Fed. 634, 83 C. C. A. 408, Judge Gray said that under the modern rule of the federal courts, the theory of vice principal as determining the liability of a master has been largely discarded, and that which is to be considered as merely and solely the negligence of a fellow servant turns rather on the character of the act than on the relation of the employees to each other. See 2 Labatt, Master & Servant, p. 1576; Texas & P. Ry. Co. v. Bourman, 212 U. S. 536, 29 Sup. Ct. 319, 53 L. Ed. 641. This evolution in opinion has been reflected in various degrees in courts of many states, including Wisconsin and Georgia. As to the earlier rule in Wisconsin, see Brabbits v. Chicago, supra. As to the test of co-association or distinct department of service, see, for example, Cadden v. American Co., 88 Wis. 409, 418, 60 N. W. 800; Rankel v. Buckstaff-Edwards Co. (Wis.) 120 N. W. 269, 20 L. R. A. (N. S.) 1180; 2 Labatt, 1609. As to Georgia, see 1 White, Pers. Inj. on Railroads, p. 1470; 2 Labatt, Master & Servant, p. 1583.

None the less the doctrine of vice principal, or, more accurately, the test whether the negligent servant failed in the performance of some absolute duty of the master, has been almost universally accepted. The doctrine has been uniformly applied in this state. 2 Labatt, Master & Servant, p. 1596. Different conclusions from the same state of facts must in general be reached under different tests. In consequence many decisions permitting the master to delegate the duty to warn, rendered in jurisdictions in which at the time the test of vice principal as thus defined did not control, are not persuasive in this court. Therefore the Portance, Hermann, and Cheeney cases, supra, while involving identity of facts, did not also involve identity of principle, and are therefore not necessarily negligible, but not at all controlling, in this state.

(c) Another unsound consideration which has been an obscure, but effective, occasion for the rule for which defendant contends is the more or less frankly avowed hostility to imposing a considerable lia-

bility on a master who has tried to be careful and is without personal fault. Thus in The Pioneer (D. C.) 78 Fed. 600, 609, Morrow, J., points out that in Hermann v. Port Blakely Mill Co., supra, he "held that the employer had fully discharged his duty to his servant, so far as a safe place to work in was concerned, when he had furnished a competent person, unhandicapped by other duties, to give the warning signal." It was therefore consistent for him to hold, as he did in The Pioneer, that "the employer does not discharge his full duty, in keeping a place reasonably safe by giving warnings of threatened or impending danger, when the employee, charged with the duty of giving the warnings, is so engrossed and busied with his other duties that he cannot properly and efficiently give the necessary warnings." It is evident that, so far as the person injured is concerned, it is quite immaterial to what the failure to warn him is due. Looked at from his point of view, the distinction is meaningless. But, if the situation be regarded from the point of view of the master, the distinction is clear. In the one case the master is not personally at fault. Therefore Judge Morrow concluded he was not liable in tort. In the other case the master was personally at fault. Therefore Judge Morrow concluded he was liable in damages. The same reasoning and conclusion appear in the two decisions of the Cheeney case. These are but two of the many illustrations of the current confusion of the master's negligence with the master's responsibility for his servant's negligence.

Moreover, so far as the Wisconsin court is concerned, the fluctuations of opinion in that court as to the responsibility of the master render it difficult to accurately estimate the weight to which the Portance case is properly entitled. It is true the change in opinion is less marked in this group of cases than in most other controversies as to negligence. None the less it is difficult to see how the conclusion in the Portance case is to be reconciled with the doctrine of that court which we have previously quoted or with later decisions like Gussart v. Greenleaf, 134 Wis. 418, 114 N. W. 799, and Promer v. Milwaukee, 90 Wis. 215, 63 N. W. 90, 48 Am. St. 905, which will be subsequently herein referred to.

(d) The true fundamental principle was announced in Farwell v.

Boston, 4 Metc. (Mass.) 49; 55, 38 Am. Dec. 339, namely: "This rule is obviously founded on the great principle of social duty, that every man, in the management of his own affairs, whether by himself or by his agents or servants, shall so conduct them as not to injure another; and if he does not, and another thereby sustains damage, he shall answer for it." The latest utterance of the federal supreme court has fully approved this reasoning "from general considerations of policy and security." Mr. Justice Moody, in Standard Oil Co. v. Anderson, 212 U. S. 215–221, 29 Sup. Ct. 252, 53 L. Ed. 480. So, in Bartonshill v. Reid, 3 Macq. H. L. Cas. 266, 283, Lord Cranworth said the master is "bound to guarantee third persons against all hurt arising from the carelessness of himself or of those acting under his orders in the course of his business." More specifically, "no duty required of him for the safety and protection of his servants can be transferred, so as to exonerate him from such liability." Field, J., in Northern Pac. R. Co. v. Herbert, 116 U. S. 642, 647, 6 Sup. Ct. 590, 593, 29 L. Ed. 755. And see Hough v. Railway Co., 100 U. S. 213, 25 L. Ed. 612.

The delegation to an employee or servant of the duty of taking such measures as are within the power of the master to protect other employees against dangers while at work cannot relieve the master from liability, if the employees to whom such duty is deputed do not exercise reasonable care in its discharge. Promer v. Milwaukee, 90 Wis. 215, 63 N. W. 90, 48 Am. St. 905. The last-cited authorities may state the rule too broadly. The courts of neither the federal nor the Wisconsin jurisdictions have followed it literally. But the general principle thus announced is obviously correct, and, subject to modification justified by particular circumstances, is generally accepted.

(e) Conformity to this principle and reasoning consistent with allied rules of law accepted without controversy require the holding that usually a servant whose duty it is to warn another of danger created by changes in operation of machinery of the plant is a vice principal. It is to be noted that defendant's authorities and others inconsistent with the conclusion here reached exhibit a curious reluctance or at least a silence as to the ultimate principle on which they rest. Their

basis is generally a dogmatic assertion of the rule as sustained by the authorities which announce it. The statement of Mr. Labatt, in 54 L. R. A. 120, is an approximation to the rationale: "The general principle that the master's duty to provide a safe place of work is not deemed to have been violated, where the unsafety is caused solely by the acts of coservants in carrying out the details of the work, clearly. involves the corollary that the master is not chargeable with the failure of these servants to warn each other as to the existence of dangerous conditions which already have supervened." This determines that failure to warn as directed is a detail, but fails to assign any reason for that conclusion. In the nature of things usually that duty is nonassignable, and its performance is not a detail. If, for example, the master provides guards for dangerous machinery and directs their proper use, he is none the less liable if, through neglect, they are not used, whereby another servant is hurt. Davidson v. Flour City Ornamental Iron Works, 107 Minn. 17, 119 N. W. 483; Baird v. Reilly, 92 Fed. 884, 35 C. C. A. 78. And see, for example, Shanny v. Androscoggin, 66 Me. 420, approved in Northern Pacific R. Co. v. Herbert, 116 U. S. 642, 6 Sup. Ct. 590, 595, 29 L. Ed. 755. Why, then, should the master be excused by giving empty orders to one servant to warn another engrossed in his work of a danger arising by the master's act in the place the master has provided, which, but for that act would be safe?

Again, it is generally held in and by the federal and Wisconsin courts in particular that "the duty to warn and instruct an employee who is set to perform a dangerous work with which he is unacquainted is a primary and absolute duty of the master to the servant, and he cannot relieve himself of liability for its nonperformance by delegating or intrusting it to a subordinate or to a fellow servant of such workman. Nothing short of actual notice of the danger to the workman who is to encounter it, with such cautionary explanation as may enable him to avoid it, will satisfy the requirement of the law, and the default of an intermediary, whether he be the highest officer in control or merely a fellow workman of the one exposed to the danger, is the default of the master." Gray, J., in Peters v. George, 154

Fed. 634, 83 C. C. A. 408. To the same effect, see Timlin, J., in Gussart v. Greenleaf, 134 Wis. 418, 425, 114 N. W. 802 (1908), referring to the other Wisconsin cases. And see Marshall, J., in Fleming v. Northern, 135 Wis. 157, 114 N. W. 841, 15 L. R. A. (N. S.) 701. And see Allen, C. J., in Wheeler v. Wason, 135 Mass. 294. This is certainly the rule in this state.

Why is the duty to warn or instruct an inexperienced servant incapable of delegation, and the duty to warn of danger impending because of some independent act performed for the master's purposes capable of delegation? In the former class of cases the servant is usually in a position to readily discover the danger to which his master's negligence may have exposed him, even in cases in which delegable duty to warn may exist. See O'Niel v. Great Northern Ry. Co., 80 Minn. 27, 82 N. W. 1086, 51 L. R. A. 532. It seems almost whimsical to hold that the master may not delegate the duty to instruct servants of a dangerous peculiarity of a place or instrumentality of which the servant himself might learn, and yet to hold that the master would not be responsible for the failure of another servant to give warning that he was about to start a machine into motion. Of his intention, the injured servant could not have learned; of the execution of his intention, the injured servant, engrossed in his work, is perilously likely to be ignorant. Moreover, the danger which comes from starting the machinery into motion without warning, usual or unusual, is peculiarly like to result in harm.

Finally, the duty to warn even third persons of a danger created by the act of the person sought to be charged is one which cannot be delegated. Thus in Boucher v. New York, 196 Mass. 355, 82 N. E. 15, 13 L. R. A. (N. S.) 1177, Knowlton, C. J., said: " When one is conducting a business, the necessary effect of which is to expose others to great danger, so that he ought to take precautions for their safety, he is responsible for the negligence of an independent contractor, to whom he intrusts the performance of this duty." This was applied to the negligence of a gate tender at a street crossing of a railroad.

(f) The weight of authority is that, as a general rule, the duty of the master to warn the servant of impending danger caused by an independent act performed for the master's business, and of perils re-

108 M.—30.

sulting from the fact that a safe place became dangerous through the work there carried on, is an absolute duty which the master cannot delegate. See authorities collected in 10 Cyc. 742; 26 Cyc. 1337; Gerrish v. New Haven, 63 Conn. 9, 27 Atl. 235 (employee failed to notify engineer of the dangerous position of plaintiff, injured by the starting of machinery); Hardacre v. Sayles (R. I.) 66 Atl. 298 (failure to notify of slipping of steam joint); Cerillos v. Deserant, 9 N. M. 49, 49 Pac. 807 (failure of employee to advise minors of presence of dangerous gases). And see 2 Labatt, Master & Servant, §§ 578, 579. Even under the test for determination of who is a fellow servant in vogue in the federal courts, the tendency is to extend the cases in which the duty of warning cannot be delegated. See Western Ele. Co. v. Hanselmann, 136 Fed. 564, 69 C. C. A. 346, 70 L. R. A. 765, supra; Kentucky B. C. Co. v. Nance (C. C. A.) 165 Fed. 44, 47 (in which the master adopted a dangerous method, which made it incumbent to warn plaintiff, a servant at work in a place safe in itself, but made dangerous by the work of removal, and it was held that the master could delegate the duty to warn). And see The Boveric (C. C. A.) 167 Fed. 520; International Paper Co. v. Robin (C. C. A.) 167 Fed. 922; Toledo B. & M. Co. v. Bosch, 101 Fed. 530; The Magdaline (D. C.) 91 Fed. 798.

It is not, however, necessary here to decide, nor is it here decided, that under all circumstances the duty of the master to warn his servant of impending danger is not absolute or nonassignable. The principle which determines this case is: When an employee is at work in a place safe in itself, but which by virtue of some independent work done for the master's purposes becomes dangerous, unless prior warning of the impending danger be given, and when the master has required such notice to be given or has assumed to customarily give such warning through an employee, the person charged with that duty is a vice principal. For his negligence therein the master is liable. This rule is generally accepted. Comrade v. Atlas, 44 Wash. 470, 87 Pac. 517 (failure to blow whistle before starting machinery in motion); Nelson v. Willey, 26 Wash. 548, 67 Pac. 237 (where a steamboat mate untied a gang plank, but negligently failed to give customary warning before letting it slide to the deck, to the injury of a deckhand;

O'Brien v. Page, 39 Wash. 537, 82 Pac. 114, 116 (applying a "nigger" to a log in a sawmill without warning to plaintiff "dogger"); Hough v. Grants Pass, 41 Ore. 531, 69 Pac. 655 (failure to warn lineman of turning on electric power); Postal v. Likes, 225 Ill. 249, 80 N. E. 136; Pantzar v. Tilly, 99 N. Y. 368, 2 N. E. 24, 27 (failure of master to warn servant at work in mine of danger from rock liable to fall); Burlington v. Crockett, 19 Neb. 139, 26 N. W. 921; Andreson v. Ogden, 8 Utah, 128, 30 Pac. 305. And see Dizonno v. Great Northern Ry. Co., 103 Minn. 120, 114 N. W. 736 (servant directed to pass over a pile of plate by foreman, who moved a plate to plaintiff's injury).

Counsel for defendant has called our attention to two traveling crane cases in this state which he urges are inconsistent with the view here taken. Jemming v. Great Northern Ry. Co., 96 Minn. 302, 104 N. W. 1079, 1 L. R. A. (N. S.) 696 (which did not involve a customary warning), and Berneche v. Hilliard, 101 Minn. 366, 112 N. W. 392. The rule in the latter case is conclusively in favor of plaintiff here. There the foreman, Hood, who put the derrick in motion, to plaintiff's injury, "was in no position to observe or know * * * the condition of things" where plaintiff was. "To charge defendant with liability for this act of Hood, knowledge in fact on his part that plaintiff would thereby be put in danger of injury should have been shown. * * *" With that fact affirmatively appearing, plaintiff could, within the rule of some of our decisions, recover. See Lohman v. Swift & Co., 105 Minn. 148, 117 N. W. 418, distinguishing the Berneche case and Doerr v. Daily News Pub. Co., 97 Minn. 248, 106 N. W. 1044. So within Inland v. Smith, 39 Ind. App. 636, 75 N. E. 852, affirmed in 168 Ind. 245, 80 N. E. 538, involving damage by a traveling crane, the hatchman here must be held to be a vice principal.

The strongest case in this state for defendants seems to be Lundquist v. Duluth St. Ry. Co., 65 Minn. 387, 67 N. W. 1006. It was there held that a servant of a street car company, who failed to give timely warning of the approach of a car to other employees engaged in track repairing was a fellow servant of repairers. And see Martin v. Atchison, T. & S. F. R. Co., 166 U. S. 399, 17 Sup. Ct. 603,

41 L. Ed. 1051 (as to which the aberrations in the federal test of who is a fellow servant are to be borne in mind), and 2 Labatt, Master & Servant, 1741, § 601. Mitchell, J., was, however, of the opposite opinion. See Erickson v. St. Paul & Duluth R. Co., 41 Minn. 500, 43 N. W. 332, 5 L. R. A. 786. And see Anderson v. Northern Mill Co., 42 Minn. 424, 44 N. W. 315. In Wisconsin such negligence of the servant has been held not to be that of a fellow servant. Promer v. Milwaukee, 90 Wis. 215, 63 N. W. 90, 48 Am. St. 905. This is the generally accepted view. See Chicago v. Eaton, 194 Ill. 441, 62 N. E. 784, 88 Am. St. 161; Metropolitan v. Skola, 183 Ill. 454, 56 N. E. 171, 75 Am. St. 120; Chicago v. Wise, 106 Ill. App. 174, affirmed 206 Ill. 453, 69 N. E. 500; D'Agostino v. Pennsylvania, 72 N. J. L. 358, 60 Atl. 1113. On the same principle the duty to warn of an expected explosion is *"material."* Carlson v. James Forrestal Co., 101 Minn. 446, 112 N. W. 626; Borgerson v. Cook Stone Co., 91 Minn. 91, 97 N. W. 734; Hjelm v. Western Granite Contracting Co., 94 Minn. 169, 102 N. W. 384. To the same effect, see Hendrickson v. U. S., 133 Iowa, 89, 110 N. W. 322, 9 L. R. A. (N. S.) 555, 12 Am. & Eng. An. Cas. 247; Belleville v. Mooney, 60 N. J. L. 323, 38 Atl. 835; Donk v. Thil, 228 Ill. 233, 81 N. E. 857; Burrows v. Ozark, 82 Ark. 343, 101 S. W. 744. But see Donovan v. Ferris, 128 Cal. 48, 60 Pac. 519, 79 Am. St. 25; Gallagher v. McMullin, 25 App. Div. 571, 49 N. Y. Supp. 734; Hare v. McIntire, 82 Me. 240, 19 Atl. 453, 8 L. R. A. 450, 17 Am. St. 476. Cf. Rankel v. Buckstaff-Edwards Co. (Wis.) 120 N. W. 269, 20 L. R. A. (N. S.) 1180.

Finally, this view of the law is clearly and certainly sustained by a group of cases in which it has been consistently applied. Fitzgerald v. International Flax Twine Co., 104 Minn. 138, 116 N. W. 475 (plaintiff, engaged in splicing a strand of flax on a machine at rest, was injured by the starting of the machinery without the usual signal); Hjelm v. Western Granite Contracting Co., 94 Minn. 169, 102 N. W. 384 (injury by a rock thrown by a blast, through the negligence of a servant to give customary notice); Lohman v. Swift & Co., 105 Minn. 148, 117 N. W. 418 (plaintiff was injured by the sudden starting of machinery which he was engaged in repairing); Cody v. Longyear, 103 Minn. 116, 114 N. W. 735 (injury caused by the starting of a

diamond drill without warning). And see Dizonno v. Great Northern Ry. Co., supra; Hess v. Adamant Mnfg. Co., 66 Minn. 79, 68 N. W. 774; Perras v. A. Booth & Co., 82 Minn. 191, 84 N. W. 739, 85 N. W. 179; Renlund v. Commodore Mining Co., 89 Minn. 41, 93 N. W. 1057, 99 Am. St. 534; Ready v. Peavy Ele. Co., 89 Minn. 154, 94 N. W. 442; Barrett v. Reardon, 95 Minn. 425, 104 N. W. 309; Kohout v. Newman, 96 Minn. 61, 104 N. W. 764; Raitila v. Consumers' Ore Co., 107 Minn. 91, 119 N. W. 490; Johnson v. Netherlands, 132 N. Y. 576, 30 N. E. 505.

3. It is further insisted that the damages as fixed by the jury ($8,000) are excessive, and appear to have been given under the influence of passion or prejudice. Plaintiff was found by the examining physician in substantially his own words to have trouble in his right hip joint. The inflammatory condition caused the ligaments to tighten. Deformity resulted. The muscles around the joint were drawn together. The apparent deformity appeared on account of the tilting of the pelvis. The leg was shortened one and one half inches. Five or six months afterwards he made another examination. The shortening had increased one half inch. When plaintiff stands straight, there is a curving of the spine. His spine is not straight, the way a person's natural spine is. A continued curvature of the spine is likely to produce disease. "We call this trouble, as nearly as it can be diagnosed, tubercular hip joint." Plaintiff was a young man earning from $50 to $80 per month. Prior to his injury he was in good health. Six months or more after the injury he was sick, and without the aid of a cane was not able to walk more than three to six blocks without resting. The physician testified that his present condition was permanent; that, in spite of any treatment he may get, his former condition could not be restored; that he would never be able again to do hard work. The trial court, as well as the jury, saw the plaintiff and heard this testimony. Under the authorities we are unwilling to interfere with that verdict, approved as it was by the trial court.

Other assignments of error which do not warrant discussion have been examined, considered, and found not to justify reversal.

Affirmed.