# ANDERS HANSON v. RED WING SEWER PIPE COMPANY.[1]

July 11, 1913.

Nos. 18,208—(233).

**Dangerous place of work — custom — master liable for failure of servant to warn.**

1. The evidence was sufficient to establish that the place where plaintiff, a servant of defendant, was required to work, was inherently dangerous, that defendant established a custom by which the men engaged in work at the bottom of a bank in a clay pit were warned by the men on top of the bank whenever the latter pried loose and were about to drop chunks of frozen clay, and that plaintiff relied on this custom for protection. *Held,* following Anderson v. Pittsburgh Coal Co. 108 Minn. 455, and other cases, that the duty to give such warnings became an absolute obligation of the master, for a breach of which it is responsible, though the failure to give the warning in the particular instance is the negligence of a servant engaged in the common employment.

[1] Reported in 142 N. W. 804.

---

Note.—The authorities on the master's duty to warn or instruct servant, generally, are collated in an extensive note in 44 L.R.A. 33. And for the duty of a master to adopt rules to protect servant, or to warn him, against dangers not reasonably to be apprehended, see note in 21 L.R.A.(N.S.) 89.

As to whether the master's duty to instruct or warn servant is delegable, see note in 26 L.R.A.(N.S.) 624.

Questions for jury.

> 2. Whether plaintiff assumed the risk and whether he was guilty of contributory negligence were, on the evidence, questions of fact, and the verdict in favor of plaintiffs on these issues is sustained by the evidence.

Action in the district court for Goodhue county to recover $6,000 for personal injury received while in the employ of defendant. The answer specifically alleged that whatever injury plaintiff sustained was due to contributory negligence on his part and without any negligence whatever on the part of defendant. The case was tried before Johnson, J., who denied defendant's motions to dismiss, and a jury which returned a verdict for $2,750 in favor of plaintiff. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*A. A. Tenner* and *F. M. Wilson*, for appellant.

*Mohn & Mohn*, for respondent.

BUNN, J.

Action by plaintiff, a servant of defendant, to recover for personal injuries alleged to have been caused by defendant's negligence. Plaintiff recovered a verdict for $2,750, and defendant appealed from an order denying its motion in the alternative for judgment notwithstanding the verdict or for a new trial.

The questions presented are: (1) Was the act which caused the accident that of the defendant, or of a fellow-servant of plaintiff? (2) Did plaintiff assume the risk or was he guilty of contributory negligence?

Defendant is engaged in the manufacture of brick and sewer pipe from clay. In February, 1911, it was obtaining clay from a bank which rose some five to six feet in a vertical wall above the ground at the bottom. At the foot of the bank, servants of defendant, including the plaintiff, were shoveling and carrying lumps of clay into a dump car which ran on a narrow track laid about five feet from the bank. The bank was frozen solid, and the chunks of clay were obtained by men on top prying them off with wedges and sledge hammers. These chunks varied in size and weight from small lumps to chunks measuring two feet or more in diameter and weighing sev-

eral hundred pounds. As plaintiff was shoveling clay into the dump car, either stooping to fill his shovel, or raising up to throw a load into the car, a heavy frozen chunk of clay was pried from the bank above by one of the men at work there, fell down the bank and struck plaintiff, breaking both bones of his right leg, and causing the injuries complained of in this action. No warning that the chunk was about to be pried loose was given to plaintiff or the other men working below.

There was evidence fairly tending to show that the place where plaintiff, and the other men, shoveled the clay into the dump car was one of considerable danger, from the falling chunks of frozen clay pried from the bank by the men on top, unless warnings were given when the chunks were about to fall. There was also evidence that it was the custom for the man on top to shout a warning to the men below before a chunk was pried loose and about to drop.

1. The facts bring the case directly within our decisions in Anderson v. Northern Mills Co. 42 Minn. 424, 44 N. W. 315; Anderson v. Pittsburgh Coal Co. 108 Minn. 455, 122 N. W. 794, 26 L.R.A. (N.S.) 624; Wickstrom v. Whitney, 118 Minn. 416, 136 N. W. 1099; and Elenduck v. Crookston Lumber Co. 121 Minn. 53, 140 N. W. 125. The place where plaintiff was required to work was inherently dangerous; the duties of the men below made it difficult, if not impossible, for them to watch the progress of the work of the man or men on the bank who were engaged in driving wedges into the frozen bank and prying loose the frozen chunks of clay. The evidence shows that the chunks were pried loose from the bank at irregular intervals; sometimes 15 minutes would elapse, and at other times as much as two hours. It seems clear that signals were necessary in order to protect the men working at the foot of the bank. The evidence is abundant to justify a finding that a custom to give such signals or warnings had been established. Defendant contends that this custom was only a practice of the men themselves, adopted by them for their own protection, and that it was not a custom established by the defendant.

The evidence, in our opinion, does not sustain this claim. There was testimony that defendant's superintendent or its foreman was at

122 M.—27.

the pit practically all the time, repeatedly instructed the men on the bank to warn the men below when a chunk was to be dropped, and saw that the custom to do so was followed. We hold that the place of work was inherently dangerous, that the evidence justified the jury in finding that signals were required by order of the master as well as by established custom, and that such signals were relied upon by the men below as a means of safety in their work. It follows, therefore, under the decisions cited, that it became the absolute duty of the defendant, the master, to give such warnings or signals, and that the failure to give the customary warning in this instance, though it was the neglect of a servant engaged in the common employment, was a breach of this absolute duty of the master.

2. The questions of assumption of risk and contributory negligence were for the jury, and their decision of these issues is sustained by the evidence.

Plaintiff testified that he relied upon the custom, and he had a right to do so to some extent at least. Though he knew that men on top were driving wedges into the frozen ground, he did not know and was not bound to know each time a chunk was ready to fall. His duties required him to face the ground or the dump car when he was shoveling or carrying the clay, and watching the bank would have seriously interfered with the work he was doing for his master, even conceding that a constant eye upon the progress of the work of the man on top would have told him when a chunk was about to fall. The evidence fairly shows that plaintiff was engrossed in the work he was required to perform for his master. The custom to give warning was an assurance of safety. It enabled the men below to devote to their work the time that would otherwise be used in watching the work of the men above. It is this feature of reliance upon an established custom that serves to make the questions of assumption of risk and contributory negligence questions of fact, and to prevent our holding that the verdict is not sustained by the evidence on these questions.

Order affirmed.