### CASPER LUTZER v. ST. PAUL TABLE COMPANY.[1]

April 25, 1913.

Nos. 18,141—(208).

**Dangerous machinery — charge to jury — evidence.**

1. In this, a personal injury action, it is *held:*

(1) The evidence sustains the verdict on the question of the negligence of defendant.

[1] Reported in 141 N. W. 115.

Note.—For common practice as the measure of master's duty to guard machin-

(2) It was not conclusively shown that plaintiff was guilty of contributory negligence, and the verdict is sustained by the evidence on this point.

(3) It was not error to instruct the jury that it was the duty of defendant to guard the knives of the wood shaper, which caused the injury to plaintiff, if it was practicable to do so, or to hold as a matter of law that the machine was so located as to be dangerous to workmen. There was no error in the charge, or in the rulings on the admission of evidence.

(4) As to whether the amount of the verdict is so excessive as to justify a reversal of the order denying a new trial, or a further reduction, the justices participating in the decision are equally divided in opinion.

Action in the district court for Ramsey county by the father and natural guardian of Alois John Lutzer, a minor, to recover $10,000 for personal injury. The complaint, after describing the construction and operation of the "tennis" machine and the horizontal knives, alleged that they were operated in violation of Laws 1911, p. 403, c. 288, amending sections 1813 and 1814 of the Revised Laws 1905, and the machine was in a dangerous and defective condition in that defendant unlawfully neglected to provide it with exhaust pipes and fans of sufficient size to carry off the dust created by it when in motion, and that it unlawfully employed the minor in violation of Laws 1907, p. 407, c. 299, § 11. The answer alleged there were no dangers connected with the operation of the machine, except such as were unavoidably involved in the operation of such machinery, denied that it was practicable to fence or guard the saws and knives to make them more safe than they were at the time of the accident, and specifically denied a violation of the statutes. The reply denied the new matter in the answer.

The case was tried before Hallam, J., who denied defendant's motion for an instructed verdict on the ground that no negligence on defendant's part had been shown to be the proximate cause of any injury, that it conclusively appeared from the evidence that the minor was guilty of contributory negligence, and that it also conclusively

ery, see note in 16 L.R.A.(N.S.) 140. And as to what is comprehended in expression "machinery of every description," in statutes imposing duty on master as to placing guards, see note in 30 L.R.A.(N.S.) 36.

appeared that he was outside the course of his employment at the time of the accident. The jury returned a verdict for $6,000. Defendant's motion for a new trial was granted unless plaintiff consented to a reduction of the verdict to $4,500, Kelly, J. From the order denying defendant's motion for a new trial, it appealed. Affirmed.

*Bracelen & Cronin* and *Ambrose Tighe,* for appellant.
*Price Wickersham,* for respondent.

BUNN, J.

This is a personal injury action by a father on behalf of his minor son. There was a verdict for $6,000 in favor of plaintiff. A motion for a new trial was made, and denied on condition that plaintiff consent to a reduction of the verdict to $4,500. Plaintiff so consented, and defendant appealed from the order denying a new trial.

The facts, either admitted or sufficiently established by the evidence, are in substance as follows: Defendant operates a factory for the manufacture of tables in North St. Paul. About February 12, 1912, Alois John Lutzer, hereinafter called the plaintiff, a boy between 15 and 16 years of age, was employed by defendant in its factory, working after school hours and on holidays. He worked at different jobs and at different machines. Defendant did not inquire his age, or have a school certificate allowing the boy to work. Some two days prior to the accident, he was ordered to report to the superintendent in the factory, who told him to work under the direction of an operator named Casper on a machine known as the "sticker" or "molder." On the morning of June 1, 1912, the superintendent instructed Casper, in the hearing of plaintiff, to work on a machine known as the "tennis" machine. Casper then went to this machine, followed by plaintiff, who testified that he was directed by the superintendent to go with Casper. This machine consisted of saws and knives for cutting and shaping table tops. The superintendent was at the time engaged in adjusting the machine, and in his presence plaintiff and Casper cleaned and oiled it. During these operations, the saws and knives were not in motion. They were then started, and a couple of table leaves were put through the machine, when it was noticed that there were holes in the blowpipes, which were over the

saws. The feeding apparatus was shut down, and the saws stopped, in order to fill the holes in the blowpipes. Plaintiff at this time was watching the saws at the south end of the machine as they slowed down, and noticed a wabbling motion of one of the saws, which he thought indicated something wrong. When the saws stopped, he reached over with his right hand and took hold of the saw, found that it was solid, and in bringing his hand back it came in contact with the knives, and his thumb was cut off close to the hand. These knives were on a "head" directly back of the saws, and between them and plaintiff. They were revolving at a very rapid rate, so fast that they looked like a stationary wheel, and it was impossible for one to tell that the knives were there. The heads which hold these knives are started and stopped separately from the saws, and when the saws were shut down, to enable the superintendent and Casper to repair the blowpipes, the heads were left running.

Defendant makes several claims in support of its contention that a new trial should be granted. We do not understand that it is seriously urged that there was not sufficient evidence of negligence on the part of defendant to support the verdict. That plaintiff was employed by defendant to assist in the operation of this machine, and that defendant was thus guilty of a violation of the statute, the jury was abundantly justified in finding. It is practically uncontradicted that plaintiff was given no instructions, and it was for the jury to say whether defendant was negligent in failing to instruct him as to the danger.

We also hold that the evidence was sufficient to warrant the jury in finding that it was practicable to guard the knives. It was therefore established that defendant was guilty of a breach of two duties imposed by statute, as well as of other negligent acts or omissions in the premises.

Defendant earnestly contends that plaintiff was guilty of contributory negligence as a matter of law. This claim is based upon his act in reaching over the revolving knives to take hold of the saw. There was evidence that it was the custom in the factory for the men employed as off-bearers to the various machines, if they noticed anything that appeared to be out of order, to see what the trouble was and notify the operator or the foreman. Plaintiff was a mere boy, and

121 M.—17.

without experience. He did not know that the knives were running, and he could not see that they were. The noise made by other machines tended to drown the noise made by the running of the tennis machine. We hold that the question of contributory negligence was for the jury, and that the evidence sustains the verdict on this point.

We find no error in the rulings on the admission of evidence or in the charge. The instruction that it was the duty of defendant to guard the knives, if it was practicable to do so, was correct. That the knives were so located as to be dangerous, if not guarded, was, we think, clear, and the court did not err in so holding as a matter of law.

The serious question is as to the amount of the recovery. We are all agreed that the verdict, even as reduced by the trial court, is a large one. But the Justices participating in this decision are evenly divided on the question whether it is so excessive as to justify a reversal of the order denying a new trial, or a further reduction. Under these circumstances the necessary result is an affirmance, and it would be profitless to discuss either the extent of plaintiff's loss or the precedents.

Order affirmed.

HALLAM, J., having tried the case below, took no part.