# MARY W. FOLEY v. CHARLES R. BENNETT AND ANOTHER.
## JOHN E. FOLEY v. SAME.[1]

February 2, 1945.

No. 33,890.

*Samuel A. Warren,* for appellants.

*Gillette & Meagher* and *Dell & Rosengren,* for respondents.

[1]Reported in 17 N. W. (2d) 509.

LORING, CHIEF JUSTICE.

These actions were brought by Mary Foley and her father to recover for personal injuries received by Mary while she was operating a power wringer on a washing machine in the Bennett basement. Mary, then 16 years old, was employed by the defendants in June 1941 to perform household duties at their residence. By the terms of her employment, she was not to do any washing, but she was soon required to operate the washing machine and wringer, which was an old-type Graybar.

The washing was done by placing the machine close to a three-sectional stationary washing tub set so near the wall of the basement that it was not practicable for the operator to step between the tub and the wall. For purposes of description, we shall refer to the sections of the stationary tub installation as tubs one, two, and three, commencing from the left, as a person would look toward the wall from the side on which the machine was operating.

Since Mary was instructed to do the washing, she used the power wringer to process clothes from the washing machine into tub one. The wringer was so arranged that it could be turned through a 180-degree arc and swung from a position in which she wrung the clothes into tub one to a position between tub one and tub two, into which she could wring the clothes from tub one for a second rinsing. In that position, she could stand at the left end of tub one and conveniently feed the clothes through the wringer, dropping them into tub two; but, because there were three sections in the stationary tub, she could not stand at a convenient place to feed the clothes through the wringer from tub two into the clothes basket, which would be placed lengthwise on the floor opposite that tub. She would have to stand in an awkward and difficult position in front of the tub and feed the wringer, which then stood at the edge of tub two, dropping the clothes into a basket immediately under the apron of the wringer. The basket further hampered Mary in the position in which she had to stand and made it more difficult and hazardous for her to feed the wringer from that direction.

Mary had explained the difficulty to Mrs. Bennett and asked permission to move the washing machine along the front of the stationary tub so that she could feed the clothes from tub three into the basket. She could then have stood at the right end of the stationary tub and could have conveniently fed the wringer from that position. Mrs. Bennett would not permit her to do this, because the electric cord which fed the electricity to the motor of the washing machine would then lie across tub one, or, perhaps, because it was not long enough to permit the movement, or because of the unfortunate position of the floor drain in front of tub three, toward which the floor sloped, thus making the place a precarious one on which to place the washing machine. Even where the machine stood opposite tub one, one leg had to be shimmed up with a piece of wood to make it level. Consequently the machine, being on wheels or casters, was insecure in its place and frequently moved because of vibration or other causes. The power wringer was equipped with a release lever on top. There is evidence in the record tending to prove that this release lever operated with considerable difficulty and was hard to push into the position where the upper roller would lift up. There was also a lever by which the wringer could be stopped and started or reversed; but, in the position in which Mary stood while wringing the clothes into the basket, this lever was at the opposite end of the wringer. Mrs. Bennett had told Mary that the rollers in the wringer were very hard (it was an old machine) and that they would injure the clothes if they were allowed to wrap around the rollers. On the morning Mary was hurt she was feeding the clothes from tub two into the basket. A pillowcase started to wrap around a roller, and Mary tried to pull it loose. As she attempted to do this, the machine moved and her right hand caught between the rollers. She was unable to release the roller or pull the plug on the electric wire, and her hand was badly crushed.

At the close of plaintiff's testimony, the court permitted defendants to rest and granted their motions for directed verdicts in their

favor on the ground of assumption of risk and contributory negligence.

■ We are of the opinion that the question whether the arrangement of the machine, its condition and position, and the difficulty of operating the release constituted a dangerous instrumentality for this immature and inexperienced operator was for the jury. Mary would have had a much stronger case had she also alleged a negligent failure to warn her of the dangers incident to the operation of the wringer, since she was immature and had never operated a power wringer before going to the Bennetts; nor is it clear that she comprehended or realized any hazard to herself should her hand be drawn in where she was constantly feeding the clothes. She was warned against damage to the clothes from their becoming wrapped around the roller, but the instructions given her said nothing about danger to herself.

■ Assumption of risk is not in the case. In master-and-servant cases, it is an affirmative defense and must be so pleaded, as must contributory negligence. Skow v. Dahl Punctureless Tire Co. 129 Minn. 324, 152 N. W. 755; Crotty v. G. N. Ry. Co. 120 Minn. 535, 139 N. W. 948; Kommerstad v. G. N. Ry. Co. 120 Minn. 376, 139 N. W. 713. (Counsel for defendant here was not the counsel who had charge of the case below.) The record does not indicate that the defense was litigated by consent.

■ There is slight, if any, evidence in the record of conduct which might be construed as contributory negligence. At most, it made a case for the jury.

The order appealed from is reversed and the case remanded with leave to the parties to apply to the court for permission to amend the pleadings so as to present the issues.

Reversed.