RAYMOND LESLIE BERG, A MINOR, BY A. C. BERG,
HIS GUARDIAN, AND ANOTHER v. LEO JOHNSON
AND ANOTHER.

90 N. W. (2d) 918.

May 16, 1958—No. 37,323.

398

*Strong, Strong & Tully* and *Walter L. Bush, Jr.*, for appellants.
*David R. Roberts, Arthur J. Donnelly,* and *Sullivan, Stringer, Donnelly & Sharood,* for respondents.

Thomas Gallagher, Justice.

Action for personal injuries sustained by plaintiff as a result of an accident in which his right foot was severed by an ensilage cutter owned by defendants. The trial court directed a verdict for defendants. This is an appeal from an order denying plaintiff's motion for a new trial. The questions for determination are whether the evidence presented a jury issue as to (1) defendants' negligence and (2) plaintiff's contributory negligence.

At the time of the accident plaintiff was 18 years of age and a recent high school graduate. He had worked on various farms in the vicinity of McIntosh during previous summer vacations, such work consisting of picking potatoes, helping thresh, hauling logs, and on one occasion driving a truck filled with chopped silage to a silo.

Early in September 1955 defendant Leo Johnson came to the home of plaintiff and engaged plaintiff and his brother, Carlin, to work

"filling silo" on several farms operated by defendants. Their first employment was at the Leo Johnson farm one mile from McIntosh. Upon arrival there they found an ensilage cutter set up in the farm-yard. One of the defendants told plaintiff to drive a tractor with rack attached to a machine cutting corn in the fields, fill the rack with corn shocks, and thence drive it to the ensilage cutter and unload it there. Three other tractors with racks attached, operated by other employees, were likewise engaged in this operation. Upon arrival at the ensilage cutter, the tractors were stopped so that the racks attached were in position for unloading at the rear of the cutter.

On this first day, Kenneth Hanson, an employee of defendants, had been placed in charge of the ensilage cutter by defendants. He remained near it until plaintiff drove up with his rack, whereupon he would climp up on the rack and the two would then unload the shocks onto the cutter. A metal slotted belt on the cutter carried the shocks under a circular drum where a sharpened blade revolving therein at a high rate of speed would cut them up into ensilage which would thereupon be blown into the silo.

Neither Hanson nor anyone else instructed plaintiff regarding the operation of the ensilage cutter. He observed Hanson's movements, however, and imitated them in his work. At times the corn shocks would jam or clog so as not to go under the drum, and Hanson would then walk out on the cutter and jump on the shocks to force them under. At other times he would get off the rack and operate a clutch bar near the cutter blade which could reverse the forward movement of the belt and thus dislodge the clogged shocks. During the first day of his employment, plaintiff made six or seven trips from the field to the cutter. On each occasion he followed Hanson's example in un-loading the shocks, occasionally jumping on the cutter to dislodge them and keep them moving. At no time did he receive any instructions from defendants to operate otherwise or any warning that the procedure described was dangerous, although defendants were aware that their employees had adopted this method of work.

On the second day the same procedure was followed until the work on this farm was completed. Later that morning the crew moved the

machinery to the Bertrand Thompson farm. There, Morris Johnson was in charge of the ensilage cutter. During that afternoon plaintiff hauled and assisted Morris Johnson in unloading four or five loads of corn shocks into the ensilage cutter. In unloading, he followed the procedure that had been followed on the preceding day, walking out onto the cutter belt and jumping on the shocks when they became jammed so as to move them under the drum. As the afternoon progressed, the shocks seemed to jam more frequently and plaintiff finally asked Morris Johnson if they should not slow up the work. He received no answer from Johnson.

At about 5 o'clock that afternoon plaintiff again walked out onto the trough of the machine to dislodge some shocks, but on this occasion he slipped and fell. He endeavored to grab the clutch bar but was unable to reach it. His right foot was drawn under the drum and pulled into the blades and severed. Morris Johnson then jumped from the rack, ran to the clutch, and reversed the machine so that plaintiff could be extricated from the drum.

On appeal defendants contend that plaintiff's acts in jumping on the ensilage cutter belt, with full knowledge of the hazards attached to this procedure, when a safe method of accomplishing the same result through the operation of the clutch bar was available, established his contributory negligence and assumption of risk as a matter of law. They also contend that, since plaintiff had been instructed only to *drive* the tractor and rack to the field, load it, and then bring it to the cutter and unload it, there was no liability on their part for his actions beyond such instructions.

■ We feel that the facts outlined could reasonably support a finding that defendants led plaintiff to understand that his job was not only to haul the loaded rack to the cutter, but also to see that the shocks thereon were unloaded, cut, and transferred to the silo. When first employed, he was told by Leo Johnson that his work was to be "filling silo." This would imply that he was to do any work necessary for such purpose. After he arrived for work, he was told to haul corn shocks from the field to the cutter and there unload them. He was under the direction of defendants' employee, Kenneth Hanson, in doing this work.

Leo Johnson testified that he "knew that the boys were going to change off, one of them take the corn in to this machine and work around the cutter when they were unloading, part of the time; * * *." He admitted that someone had told him that his employees were jumping on the racks to dislodge the shocks. At no time did he or defendant Thompson instruct plaintiff that this method of work was dangerous. From all the foregoing, plaintiff could reasonably assume that the work he was performing at the time of his injuries was in accordance with defendants' requirements.

■ It is likewise clear that the evidence would sustain a finding of defendant's negligence in failing to properly instruct plaintiff as to the methods to pursue and the dangers and risk involved, and that such negligence was a proximate cause of plaintiff's injuries. The duty of a master to warn and instruct his employees of the dangers and risks involved in his employment is absolute and nondelegable. Gillespie v. G. N. Ry. Co. 124 Minn. 1, 144 N. W. 466; 11 Dunnell, Dig. (3 ed.) § 5868. Where there is a violation of such duty and as a proximate result an employee is injured in his work, the master is liable even though the negligence of a fellow servant may have concurred in causing the accident. Jenkins v. Jenkins, 220 Minn. 216, 19 N. W. (2d) 389; Nordberg v. Hall, 116 Minn. 71, 133 N. W. 168; Anderson v. Pittsburgh Coal Co. 108 Minn. 455, 122 N. W. 794; 26 L.R.A. (N.S.) 624; 11 Dunnell, Dig. (3 ed.) § 5952.

It is true that here Leo Johnson instructed all employees to "be careful," but the jury could well determine that this warning was far short of an adequate instruction as to the method that plaintiff should follow in his work. He was never advised that there was a safer way to dislodge the shocks through the operation of the clutch bar, nor does it appear that defendants instructed anyone to operate it for this purpose. The facts and circumstances outlined made the issue of defendants' negligence one for the jury's determination.

■ Defendants contend that plaintiff's testimony compels a finding that he knowingly pursued a dangerous course when a more safe one was available and hence is guilty of contributory negligence and assumption of risk as a matter of law. Plaintiff's testimony upon this issue may

be summarized as follows:

"Q. And you would jump with a sort of a forward motion with your feet so that you would get the effect of putting some pressure on to push the corn fodder into the wheel, is that right?

"A. Yes.

     \*     \*     \*     \*     \*

"Q. And as you did it you knew, and you could see, that there was a chance that you might slip?

"A. I never took that into consideration however.

     \*     \*     \*     \*     \*

"Q. One of the questions I asked you, Mr. Berg, was this: 'You knew enough about that machinery so that when you looked at that once you knew just about how it worked, didn't you?' Answer, 'Yes.' That is true, isn't it?

"A. Well, I couldn't just look at it once and tell you how it operated.

     \*     \*     \*     \*     \*

"Q. \* \* \* you answered '\* \* \* the only thing I didn't know about was how to use the clutch.'

     \*     \*     \*     \*     \*

"Q. And I also asked you this question: '\* \* \* you knew the operation that you performed was a dangerous operation; and it was dangerous because you were likely to go into the wheel?' And you answered, 'Yes' to that?

"A. I answered yes, but that was from the knowledge that I have now. \* \* \* the true answer would be that I never really thought about it; and I was just doing it as part of my job as I had seen the others do it; and therefore I was not aware of any danger involved."

We do not feel that there is anything in such testimony or in the record generally which would compel a finding that plaintiff was familiar with the ensilage cutter and aware of its attendant dangers and hazards at the time he commenced work. He testified that he had never really thought about the dangers attendant upon the operation of the cutter and that he was following the method of work now described by defendants as dangerous "as part of my job as I had seen the others do it."

The facts are not too distinct from those in Jenkins v. Jenkins, 220 Minn. 216, 19 N. W. (2d) 389, in which the court held that the issues of contributory negligence and assumption of risk were for the jury. In commenting thereon, it was therein stated (220 Minn. 223, 19 N. W. [2d] 393):

"* * * plaintiff was a boy 16 years of age, inexperienced as a farm hand and in the handling of farm machinery. He knew nothing about the mowing machine in question or the dangers involved in working with it. He had received no instructions or warning from anyone. He had never seen anyone sitting on the windrower and had never helped work with it before the day of the accident. The windrower was not equipped with a seat. It was difficult for plaintiff to keep up with the work of preventing the clogging of the pea vines by following along on foot, and he was told by the older and more experienced employe to get onto the windrower. He was not aware of the danger of standing on the machine, and did not know of the washout condition in the field and the added danger therefrom. Under those circumstances, the issues of assumption of risk and contributory negligence were questions of fact for the jury."

Here, plaintiff, as a high school student, had worked on farms during a few previous summers but had at no time operated an ensilage cutter. As he stated "I couldn't just look at it once and tell you how it operated." Had he thought there might be a danger of falling while doing the work which resulted in his injuries, his instructions to unload the racks with Hanson, who was in charge of the cutter and who was pursuing the same method in dislodging the clogged corn shocks, might well have dispelled such fears, particularly in the absence of any warning from defendants after they were aware that plaintiff and their other employee were following the dangerous method of work described. That such circumstances lulled plaintiff into a belief that he was not doing anything inherently dangerous is evidenced by his testimony that "I never really thought about it; and I was just doing it as part of my job as I had seen the others do it; and therefore I was not aware of any danger involved."

In our opinion such testimony, as well as the facts and circumstances

described, created a fact question for the jury on the issues of plaintiff's contributory negligence and assumption of risk. Foley v. Bennett, 219 Minn. 249, 17 N. W. (2d) 509; Graseth v. Northwestern Knitting Co. 128 Minn. 245, 150 N. W. 804; Bertram v. Bemidji Brg. Co. 123 Minn. 76, 142 N. W. 1045; Lutzer v. St. Paul Table Co. 121 Minn. 254, 141 N. W. 115.

The order appealed from is reversed and a new trial granted.